J. A. SCUDDY *v.* W. A. SHAFFER.

| 10  | 133 |
| 107 | 528 |

Congress passed a law on the 4th September, 1841, granting upon certain conditions land to the States therein specified, and among them Louisiana, for the purposes of internal improvement. The legislature of Louisiana, in 1844, provided for the sale of warrants for the location of the land, and also that patents should issue on proof that the warrants had been properly located. Plaintiff being the holder of such a warrant located it on the land in controversy. The location having been approved by the Secretary of the Interior, and a certificate to that effect having been granted by the Register, the Governor of Louisiana issued a patent to the plaintiff, bearing date 12th November, 1852. The opposing titles of defendant are derived, first from *Billio*, whose entry was cancelled as having been obtained by fraud, and second by purchase, from the State of Louisiana, in April, 1853, under the provisions of an Act of Congress, passed 2nd of March, 1849, and of acts of the legislature of Louisiana, passed in 1850, 1852 and 1853, to carry that act into effect. Defendant contended that the Secretary of the Interior had, under the authority of the act of 1841, in April, 1853, revoked his approval to the State of the lands in controversy, which defeated the plaintiff's claim under the act of the legislature of 1844. *By the Court.*—The construction of the act of 1849 by the Secretary of the Interior may be strictly correct, and yet it does not follow

that the location of a warrant under the Internal Improvement law of 1841, which had been approved by the proper department of the government, and for which a patent had subsequently issued by the State, could be revoked so as to destroy the title conferred by the patent. As both the acts of 1841 and 1849 were grants of land to the State, the courts cannot go behind the patent which the State has granted. The patent can only be attacked on the ground of error and fraud,

The Commissioner General of the Land Office has the right to vacate illegal entries prior to the issuing of the patent.

APPEAL from the District Court of the Parish of Terrebonne, *Cole, J.*

*J. C. & A. Beatty* and *Fitz*, for plaintiff and appellant. *Connelly & Rightor* and *Mercer*, for defendant.

OGDEN, J. This is a petitory action for a quarter section of land. The plaintiff claims title by virtue of the location on the 12th of July, 1850, of a warrant of the State of Louisiana, issued under the provisions of an Act of Congress of the 4th September, 1841, and of an Act of the Legislature of Louisiana, of the 25th March, 1844.

The defendant called in warranty his vendor, *Alexander McMaster*, who sets up two titles, one derived by *McMaster*, by purchase from *Madeline Billio* in 1836, and the other, a title acquired by the defendant himself, by purchase from the State of Louisiana, on the 16th of April, 1853. The title of *Madeline Billio* is founded on an entry made by her in *1836*, and purchase as evidenced by the receiver's receipt. The entry was subsequently cancelled as fraudulent, and as no patent had issued, the authority of the Commissioner General to vacate the entry on that ground cannot be doubted. *Bettis* v. *Ammonett*, 4 Ann. 364. *Pepper* v. *Dunlap*, 9 Rob. 288. *Grudy* v. *Woods*, 19 L. R. 337. *Wilcox* v. *Jackson*, 13 Peters, R. 498.

The case must be decided on the relative merits of the two titles derived from the State of Louisiana. The plaintiff derives his title in the following manner: by the 8th section of an Act of Congress, of the 4th September, 1841, the government of the United States granted to each of several States specified in the Act, and among them Louisiana, five hundred thousand acres of land, for the purposes of internal improvement. The Act provided that the selections of the land were to be made in such manner as the Legislature of the State should direct, the locations to be made on any public lands except such as were or might be reserved from sale by any law of Congress, or proclamation of the President of the United States. The 9th section of the Act provided that the nett proceeds of the sales of the lands so granted should be applied to objects of internal improvement within the State, such as roads, railways, bridges, canals, and improvement of water courses, and draining of swamps. An Act of the Legislature of 1844 provided that warrants for the location of the lands should be sold in the same manner as the lands located, and it was made the duty of the Governor to issue patents for the lands located by warrants, whenever he should be satisfied that they had been properly located.

The plaintiff being the holder of such a warrant, located it on the land claimed in this suit. The location having been approved by the Secretary of the Interior, and a certificate to that effect granted by the Register, the Governor of Louisiana issued a patent to the plaintiff, bearing date the 12th November, 1852.

The title was thus derived in strict conformity with the Act of Congress, and the Act of the Legislature of the State.

The opposing title of defendant was derived as follows under an Act of Congress of the 2nd March, 1849, and certain Acts of the Legislature of this State, passed to carry into effect the Act of Congress. The first section of the Act of Congress of 1849 declares, " That to aid the State of Louisiana in constructing the necessary levees and drains to reclaim the swamp and overflowed lands therein, the whole of those swamp and overflowed lands, which are or may be found unfit for cultivation, shall be, and the same are hereby granted to the State." The second section provides, " that as soon as the Secretary of the Treasury shall be advised by the Governor of Louisiana, that the State has made the necessary preparation to defray the expenses thereof, he shall cause a personal examination to be made under the direction of the Surveyor General thereof, by experienced and faithful deputies, of all the swamp lands therein which are subject to overflow, and unfit for cultivation, and a list of the same to be made out and certified by the deputies and Surveyor General, to the Secretary of the Treasury, who shall approve the same, so far as they are not claimed and held by individuals, and on that approval, the fee simple to said lands shall vest in the said State of Louisiana, subject to the disposal of the Legislature thereof; Provided, however, that the proceeds of said lands shall be applied exclusively, as far as necessary, to the construction of the levees and drains aforesaid." On the 21st of March, 1850, the Legislature of Louisiana passed an Act to enable the Governor to have the swamp and overflowed lands selected; and in 1852 they passed an Act giving a preference in entering such lands, to those in possession of or cultivating them, and the time of entering them was further extended by an Act of 1853.

The defendant entered this land on the 15th of July, 1853, by virtue of a preference right claimed under that Act of the Legislature. He was permitted to make this entry at the State Land Office, in consequence of the Secretary of the Interior having, on the 14th of April, revoked his approval to the State, under the Act of 1841, of this and other lands, which had been located under warrants sold by the State in conformity to the Act of the Legislature of 1844. The reason assigned by the Secretary of the Interior was, that these locations had been made subsequent to the passage of the Act of Congress, of 1849, granting to the State all the swamp and overflowed lands. He states, in his opinion, that he considered the words used in the first section of that Act as importing a grant *in presenti*, and as conferring a right to the land, though other proceedings were necessary to perfect the title, and that when the title was perfected it had relation back to the date of the grant. His approval to the State of the location of the land in controversy, under the internal improvement law of 1841 was revoked, but the land was at the same time approved to the State, as having a vested title to it, under the Act of 1849, and taking effect from the date of the passage of the Act. As the second section of the Act of 1849 declares in express terms that the fee simple in the lands shall vest in the State, and be subject to the disposal of the Legislature, on the approval of the Secretary of the Treasury, after certified lists should be made out by the deputies and Surveyor General, it is contended by the appellants that the construction placed on the law by the Secretary was erroneous. We do not consider it necessary to decide that question. It is certain that the Legislature could not have disposed of the land, as belonging to the State, under the provisions of that Act, until she had complied with the conditions imposed on her by the Act of Congress, and until the approval

of the Secretary of the Treasury, but if she had not chosen to avail herself of the right given to her to appropriate these lands as swamp lands, by defraying the expenses of locating them, she had still the right of locating them, under the Internal Improvement law of 1841, which was unconditional. The construction of the Act of 1849 by the Secretary of the Interior may be strictly correct, and yet it does not follow that the location of a warrant under the Internal Improvement law of 1841, which had been approved by the proper department of the government and for which a patent had been subsequently issued by the State could be revoked, so as to destroy the title conferred by the patent. The question would have been different if, after the passage by Congress of the Act of 1849, the United States had granted the land away from the State of Louisiana. Such was not the case, and as both the Acts of 1841 and of 1849 are grants of land to the State, we cannot go behind the patent which the State has granted. The patent can only be attacked on the ground of error or fraud. *Pattern* v. *Weir*, 5 Peters 241. *United States* v. *Andrews*, 6 Peters, 728. *Lote* v. *Prudhom*, 3 Rob. 293. *Begnell* v. *Brodwick*, 13 Peters 437. *Thayer* v. *Lessee of Young*, 3 Peters 320. It is true that a patent issued against law is void, but in the present case the patent and all the proceedings on which it was based was in conformity to the law. As between the government of the United States and the State of Louisiana, a question will arise whether the State is not entitled to an additional quantity of land, to be located under the Act of Congress of 1841, in consequence of the swamp lands having been appropriated for locations of warrants issued under the Internal Improvement Act; but we are of opinion that the title which the State has granted to the plaintiff, and for which she has been paid, is unaffected by the acts of the officers of the United States government and of the State government, done since the patent was issued.

The ground on which the judgment of the court below, declaring the plaintiff's title to be void, was rendered, seems to be that the object of the donation of the swamp lands by Congress would be thereby defeated. We cannot presume that the State will not do in this respect what her honor and duty requires, but the titles which she grants to lands given to her by the government of the United States, under either the laws of 1841 or 1849, cannot be made to depend on the faithful application by the State of the funds derived from them, to the purposes for which the grants were made.

It is therefore ordered and adjudged that the judgment of the court below be avoided and reversed, that the plaintiff be decreed to be the owner, and that he recover possession from the defendant, of the land described in his petition, to wit: lots No. 5 and 6, being the south-east quarter of Section No. 71, in Township No. 17, of Range No. 16, containing one hundred and sixty-one 52-100 acres; that the case be remanded to be tried as to the claims of the defendant against his warrantor.

The costs in both courts to be paid by the defendant and warrantor.