ROGERS, Justice.
 

 J. P. Barnett and J. Cleveland Fruge seek an injunction against the State Mineral Board to prevent the Board from granting a mineral lease on a tract of land containing about 690 acres in the Parish of St. Landry. Plaintiffs claim to be the owners of the land by virtue of grants from the State of Louisiana to the Red. River, Atchafalaya and Bayou Boeuf Levee District under Act No. 79 of 1890, as amended by Act No. 46 of 1892, ratified and approved by Act No. 316 of 1926. Plaintiffs set forth their complete' chain of title, beginning with the transfers from the State to the Levee District and from the Levee District, by mesne conveyances, to them. Plaintiffs allege that the State Mineral Board is advertising for bids for a mineral lease on their land, and, unless enjoined, will grant such a lease, to their irreparable injury, loss and damage.
 

 The State Mineral Board excepted to plaintiffs’ petition, on the ground that it
 
 *1159
 
 failed to disclose a cause or right of action. The exception was referred to the merits and defendant answered, denying plaintiffs’ ownership of the land and alleging that title to the land was still vested in the State. Defendant showed that the instruments evidencing the grant by the State to the Levee District were not signed by both the State Auditor and the Register of the Land Office, as provided by Act No. 79 of 1890, as amended by Act No. 46 of. 1892, and defendant averred that Act No. 316 of 1926, purporting to ratify and confirm the instruments evidencing the grants, is unconstitutional because it violates sections 2, 4, and 12 of Article 4 of the Constitution of 1921.
 

 The facts are not disputed. The evidence offered on the trial of -the case is wholly documentary. This evidence consists of plaintiffs’ chain of title, beginning with the instruments of conveyance by the State, signed by the State Auditor, to the Levee District, which instruments were executed in the month of February, 1897, and were recorded in the parish records in the same month and year; certified copies of the deeds in the chain of title running from the Levee District to and including the title acquired by plaintiffs; and a certified copy of the advertisement of the State Mineral Board asking for bids for the lease of the mineral rights in and to the land claimed by plaintiffs.
 

 The trial judge rendered judgment, recognizing plaintiffs as the owners of the land in dispute, but not of the mineral rights thereunder, and denying plaintiffs injunctive relief. Plaintiffs appealed, and, after lodging the transcript, filed in this Court a plea of peremption and prescription and a plea of estoppel, contending that if the State had any right to dispute the validity of the grants to the Levee District, this right was lost by the lapse of six years under Act No. 62 of 1912; and that the State is estopped from attacking the constitutionality of Act No. 316 of 1926 because it maintained that the act was constitutional in the case of State ex rel. Woods v. Register of the State Land Office, 189 La. 69, 179 So. 38.
 

 The case, as presented in the district court, involved the following question: (1) Does Act No. 79 of 1890, as amended by Act No. 46 of 1892, require that both the State Auditor and the Register of the State Land Office should have signed the instruments evidencing the transfer to the Levee District? (2) Is Act bfo. 316 of 1926 unconstitutional as being violative of sections 2, 4, and 12 of Article 4 of the Constitution of 1921?
 

 The case, as presented in this Court, involves those questions and the additional questions: (a) Has the State lost its rights, if any, by the lapse of six years, as provided by Act No. 62 of 1912? (b) Is the State estopped from asserting the unconstitutionality of Act No. 316 of 1926 by having asserted its constitutionality in the case of State ex rel. Woods v. Register of the State Land Office?
 

 The trial judge, in rendering judgment on the questions submitted to him as shown by his written reasons on file in the record, held that Act No. 79 of 1890, as amended by Act No. 46 of 1892, required the sig
 
 *1161
 
 natures of both the State Auditor and the Register of the State Land Office to the instruments evidencing the grants to the Levee District, and that, therefore, until the passage of Act No. 316 of 1926, the Levee District did not acquire any title to the land in dispute; that upon the adoption of Act No. 316 of 1926, the title to the land passed to the Levee District and inured to its vendee and through him to the plaintiffs; that as plaintiffs did not acquire any title whatever until Act No. 316 of 1926 became effective, the title so acquired was only to the land itself and not to the minerals under the land, which the State was prevented from conveying by section 2 of Article 4 of the Constitution of 1921.
 

 Linked with this question, however, is the second question submitted for our consideration, which is whether the instruments of transfer from the State to the Levee District, if informally executed, were constitutionally validated by the provisions of Act No. 316 of 1926. That statute declares, in plain and unmistakable language, that such instruments were merely “informally executed transfers,” which the Legislature, in enacting the statute, expressly “ratified, quieted and confirmed, the same as if all such deeds had been signed by both the Auditor and Register of the State Land Office * * *.”
 

 In this case, the lands composing the tract in dispute were applied for by the Levee District, identified by instruments of conveyance signed by the State Auditor, and placed of record in the parish wherein the lands are situated. Subsequently, the lands were sold by the Levee District and are now held by the plaintiffs as successors in title of the Levee District by duly recorded mesne conveyances.
 

 Conceding that under the provisions of Act No.
 
 79
 
 of 1890, as amended by Act No. 46 of 1892, it was the duty of the Register of the State Land Office, as well as of the State Auditor to sign the instruments of conveyance to the Levee District, the question arises as to whether the failure of the Register of the State Land Office to sign those instruments was cured by the adoption of Act No. 316 of 1926, in view of the provisions of section 2 of Article 4 of the Constitution of 1921.
 

 The trial judge, in rendering his judgment, gave effect to Act No. 316 of 1926 as conveying the land, but he refused to give it effect as conveying the mineral rights under the land, because of the intervening constitutional provision — section 2 of Article 4 of the Constitution of 1921. [
 

 The pertinent provision of the article of the Constitution reads as follows: “In all cases the mineral rights on any and all property sold by the State shall be reserved, except where the owner or other person having the right to redeem may buy or redeem property sold or adjudicated to the State for taxes.”
 

 Counsel for the plaintiffs and the amici curiae contend that Act No. 316 of 1926 is not violative of the constitutional prohibition which we have quoted, for the reason that the transfer by the State to the Levee District was a grant and not a sale, and for the further reason that the legislative act is simply a remedial or curative statute or a statute of repose.
 

 
 *1163
 
 The first question submitted for our consideration is whether Act No. 79 of 1890, as amended by Act No. 46 of 1892, required the signatures of both the State Auditor and the Register of the State Land Office to the instruments transferring the land in dispute to the Levee District. This question has been extensively and ably argued by counsel for the litigants, as well as by the amici curiae.
 

 In the course of the argument, Act No. 79 of 1890, as amended, has been analyzed and all the decisions of the Court touching on the question, beginning with Worden v. Fisher, 52 La.Ann. 576, 27 So. 83, and ending with State ex rel. Woods v. Register of the State Land Office, 189 La. 69, 179 So. 38, have been cited for the purpose of showing, on the one side, that there was no valid conveyance by the State to the Levee District because the instruments of convey.'ance were not signed by both the Auditor and the Register of the State Land Office, and, on the other side, that the conveyance from the State to the Levee District Was valid, although the instruments of conveyance were signed only by the Auditor.
 

 Counsel for plaintiffs and the amici curiae argue that section 2 of Article 4 of the Constitution of 1921 does not purport to affect any transfer or conveyance by the State that is not a sale. They argue that the prohibition contained in the article of the Constitution is against the sale by the State without the reservation of the mineral fights and not ‘against a grant or transfer by the State to one of its subdivisions or political corporations for the purpose of administering the same public duty that the lands themselves would have subserved if they remain under the control of the Register of the State Land Office. They further argue that the only effect of the article of the Constitution on the various grants or transfers to the Levee Districts is to require Levee Districts themselves to reserve the minerals in any sales made by them after the adoption of the Constitution of 1921. There appears to be considerable merit in the argument, but we do not find it necessary to pass on that phase of the case, because even if it be conceded that the article of the Constitution requires the State to reserve the minerals in any grant or transfer of lands executed after the adoption of the Constitution, it is clear that the article does not affect any grants or transfers o'f lands made prior to the adoption of the Constitution.
 

 When we consider that the plain language of the statute under which the State Auditor and the Register of the State Land Office, who sign the instruments of conveyance, vests in them a mere ministerial duty to execute such instruments upon the request of the Levee District, it is clear that when those officers act, they do so on the request of the Levee District without any right to refuse the request or any discretion as to whether they will or will not convey the lands^-nothing remains to be determined, except whether the lands applied for lie within the limits of the Levee District. Neither the Auditor nor the Register has any personal interest in the transaction. Neither of them is clothed with discretion to refuse to sign the deeds of transfer. They are merely the in
 
 *1165
 
 strumentalities selected by the Legislature for executing the instruments. The Legislature, if it saw fit to do so, might have designated some other state officer or employee to sign the deeds. There is nothing in the statute that requires the Auditor and the Register to sign the same docu■ment. The Auditor may sign one deed and the Register may sign another deed, whereupon the transfer of the land becomes effective.
 

 We do not find anything in the prohibition contained in section 2 of Article 4 of the Constitution of 1921 that invalidates, either in whole or in part, the provisions of Act No. 316 of 1926. The statute does not convey any right or property to any person. It is merely a remedial or curative statute, or a statute of repose. Its obvious purpose was to set at rest the question of whether the original legislative acts granting state lands to the levee districts require that both or only one of the signatures of the officers entrusted with the duty be affixed to the deeds of transfer, and to clarify any possible conflicting jurisprudence on the subject.
 

 A mere reading of Act No. 316 of 1926 discloses that the act does not purport to legalize the unauthorized or invalid act of any officer, agent, or servant of the State. What the Auditor did in this case, and what he has done in numerous similar cases, was not an illegal act on his part. At most, his action merely lacked the concurrence of the Register of the State Land Office, which might otherwise be supplied. There is no reason why the Register could not have subsequently concurred in the action of the Auditor. On the other hand, the Legislature, if it saw fit, might have divested the Register of his authority to concur in the act of the Auditor and vested that authority in some other public official or employee; or the Legislature, as it did in effect by the adoption of Act No: 316 of 1926, might have done away with the necessity of another mere ministerial and formal signature to instruments executed pursuant to prior statutes.
 

 As we have hereinabove pointed out, Act No. 316 of 1926 was not a sale. It was not even a new grant. It was merely the ratification and confirmation of informally executed deeds of transfers from the State to its various levee districts. There is no doubt of the right of the Legislature to adopt the statute. The statute itself is not unconstitutional because its declared purpose is to cure an irregularity of non-observance of requirements which it originally might have dispensed with. The statute relates back to the execution of the original deeds of transfer to the various levee districts. Under its express terms, it ratifies, quiets, and confirms all prior transfers of lands to the levee districts, whether the transfers be signed either by the Auditor or by the Register “the same as if all such deeds had been signed by both” of those officers — that is to say, as if the deeds had been originally signed'by both the Auditor and the Register.
 

 We see no reason why the adoption of section 2 of Article 4 of the Constitution of 1921 rendered the Legislature powerless to confirm and quiet existing rights and, by
 
 *1167
 
 curing mere formal defects, to furnish the means of enforcing those rights. In the case of City of New Orleans v. New Orleans and Carrollton R. Co., 35 La.Ann. 679, it was held that the constitutional restraint against retroactive legislation did not prevent the passage of remedial or corrective laws designed to^ carry out a previously existing right, or to enforce an anterior obligation, otherwise barren of advantage.
 

 In the Sixth Edition of Cooley’s Treatise on the Constitutional Limitations, the question of remedial or retrospective laws is dealt with, and we quote the following from page 455 of chapter 11 of that work:
 

 “There is no doubt of the right of the legislature to pass statutes which reach back to change or modify the effect of prior transactions provided retrospective laws are not forbidden eo nomine by the state constitution.”
 

 Further on, in the same work at page 457, we find the following statement of the law:
 

 “If the thing wanting or which failed to be done and which constitutes the defect in the proceedings is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute. And if the irregularity consists in doing some act, ór in the mode or manner of doing some act which the legislature may have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law.”
 

 These legal principles have been well recognized by the highest courts in all the states. A typical case in which this has been done is Sanger v. Bridgeport, 124 Conn. 183, 198 A. 746, 116 A.L.R. 1031, wherein as shown by the syllabus, the Supreme Court of Connecticut held:
 

 “Remedial statutes may be retrospective in operation provided they do not impair contracts or disturb absolute vested rights, but only go to confirm rights already existing and in furtherance of the remedy, and by curing defects afford or add to the means of enforcing existing rights or obligations; and if the irregularity sought to be cured consists in a mode or manner of doing some act which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law. * * *
 

 “When the object of remedial legislation is to correct an innocent mistake and remedy a resulting impediment to the enforcement of an obligation of one person to another, and the effect is to promote justice, the law should be sustained unless it conflicts with vested rights. * * *
 

 “The legislature may cure by subsequent act an irregularity of nonobservance of requirements which it originally might have dispensed with, provided that vested rights have not intervened.”
 

 Our conclusion is, that Act No. 316 of 1926 does not violate section 2 of Article 4 of the Constitution of 1921.
 

 This brings us to the second and third attacks on the constitutionality of Act No. 316 of 1926. Apparently counsel
 
 *1169
 
 for defendant are not seriously urging those pleas. In their brief, they merely state but do not argue their contentions that the act is a local or special law, and, therefore, violative of section 4 of Article 4 of the Constitution, and that it purports to grant to plaintiffs property of the State, in violation of section 12 of Article 4 of the Constitution. A sufficient answer to defendant’s contentions is, first, that Act No. 316 is not a local or special law, and, secondly, it does not grant to any person any property or thing of value. So far as the latter contention is concerned, it may be observed that the land in dispute was a complete grant to the Levee District under the transfer by the Auditor. The statute merely perfected or clarified a possible defect in the evidence of the grant. State ex rel. Board of Commissioners of Tensas Levee District v. Grace, 161 La. 1039, 109 So. 830.
 

 In support of its argument that the Legislature could not, by enactment of a statute subsequent to the adoption of the Constitution of 1921, validate a disposable title to state property, including the minerals, defendant cites the case of State v. Grace, supra. Conceding merely for the sake of the argument that the State retained a disposable title to the property after the execution of the instruments of conveyance to the Levee District, nevertheless we do not think the case relied on is authority for defendant’s contention. In State v. Grace, supra, the Tensas Levee District, the beneficiary of a grant identical with the one here involved, sought by mandamus to compel the State Auditor and the Register of the State Land Office to certify to relator certain lands lying within its district. The respondents had refused to execute a deed conveying the property to the relator. They took the position that the land never having been conveyed to the Levee District, it was still under legislative control in 1921 when the grant was partially repealed by the Constitution adopted in that year. The respondents in that case, as does the defendant here, invoked the provisions of section 2 of Article 4 of the Constitution of 1921 in support of their position. This Court, in affirming the judgment of the District court in State v. Grace, supra, held that the constitutional provision relied on by the respondents did not repeal even partially the legislative grant to the. Tensas Levee District, and that the Auditor and the Register could be, and they were, compelled by mandamus to sign an instrument of transfer of lands to the levee district in 1926 without reservation of the minerals, notwithstanding the intervening constitution of 1921 prohibiting the State from selling its lands without reserving the mineral rights. This was on the theory that a transfer to the levee district was a grant to the district, a mere changing of state agencies.
 

 As there was no constitutional or statutory provision for reserving mineral rights in force in 1897 when the instruments of conveyance from the State to the levee district were executed, the rights which the levee district acquired by virtue of those instruments included the mineral rights, as well as all other rights connected with the property. The rights, including the mineral rights, acquired by the levee district under the pro
 
 *1171
 
 visions of Act No. 79 of 1890, as amended by Act No. 46 of 1892, ratified and confirmed by the provisions of Act No. 316 of 1926, inured to the benefit of the plaintiffs who deraigned their title from the levee board under an act of sale executed on November. 26, 1900. Those rights accrued to plaintiffs prior to the adoption of the Constitution of 1921, and no provision in that instrument has deprived them of the rights.
 

 What we have hereinabove said disposes of the case and renders it unnecessary for us to consider the issues raised under the special pleas filed by the plaintiffs in this Court.
 

 ' For the reasons assigned, the judgment appealed from is annulled, and it is now ordered that there be judgment in favor of the plaintiffs, J. P. Barnett and J. Cleveland Fruge, and against the defendant, State Mineral . Board, recognizing plaintiffs as the owners of the land and the mineral rights therein and thereunder described, in plaintiffs’ petition as follows:
 

 “Tract No. 83 — All of the fractional Section 13, situated in Township 3 South, Range 3 East; the East half of the Southeast Quarter of Section 18, Township 3 South, Range 4 East La. Mer.; and the western 160 acres of tract of land containing 240 acres, which tract is located in the southern half of Section 17, Township 3 South, Range 4 East, being bounded on the North by Pekin Cooperage Company,-east by the balance of said 240 acre tract, south by the southern line of Section 17; and west by the western line of Section 17. All of the above property is situated in the Parish of St. Landry and contains approximately 690 acres and is shown on a map of said area on file in the State Land Office.”
 

 It is further ordered that the preliminary injunction herein issued be perpetuated, and that the defendant, State Mineral Board, be and it is hereby enjoined and restrained from leasing the oil, gas, and other mineral, rights in and under the above described land to any person, firm or corporation.
 

 FOURNET, J., concurs.