132 So.2d 897 (1961)
STATE of Louisiana
v.
Dennis CENAC et al.
No. 5284.
Court of Appeal of Louisiana, First Circuit.
June 30, 1961.
As Amended on Denial of Rehearing September 25, 1961.
Jack P. F. Gremillion, Atty. Gen., George M. Ponder, John L. Madden, Asst. Attys. Gen., Ernest R. Eldred, Sp. Asst. Atty. Gen., and Edward M. Carmouche, Lake Charles, for appellant.
S. W. Plauche, Jr., Lake Charles, Claude B. Duval, Richard E. Talbot, Houma, for appellees.
Before ELLIS, LOTTINGER, JONES, HERGET and LANDRY, JJ.
Writ of Certiorari Denied, see page 928, post.
LANDRY, Judge.
This is a slander of title suit in which the State of Louisiana, claiming title to the bed and bottom of Lake Barre, Terrebonne Parish, Louisiana, asserts that defendants, Dennis Cenac, Victoria Blum, Sidney Steinfield, Maurice Blum, Mrs. Hattie Blum Oldstein and Mrs. Bertha Blum Massman, have slandered petitioner's title to a portion of the bed of said waterway by the execution of an oil, gas and mineral lease covering a portion of the bed and bottom thereof situated in Sections 49, 50, 51 and 52, Township 21 South, Range 19 East, Terrebonne Parish
On exceptions of nonjoinder of parties defendants filed by the aforesaid defendants plaintiff, by supplemental and amended petition, impleaded as defendants herein Robert B. Prentice and M. H. Marr, mineral lessees of defendants Dennis Cenac, et al.
The petition of the State of Louisiana prays that plaintiff be recognized as owner of the bed and bottom of Lake Barre and defendants ordered to disclaim all interest therein or, within a delay to be fixed by the court, assert defendants' claim of title to the portion thereof embraced within the mineral lease which plaintiff alleges constitutes a slander of plaintiff's title.
In response to the petition of the State of Louisiana as supplemented and amended each defendant filed a plea of prescription or peremption predicated upon Act 62 of 1912, now LSA-R.S. 9:5661, which reads in full as follows:
"§ 5661. Actions, including those by the State of Louisiana, to annul any patent issued by the state, duly signed by the governor and the register of the *898 state land office, and of record in the state land office, are prescribed by six years, reckoning from the day of the issuance of the patent."
The trial court sustained the defendants' plea of prescription and dismissed plaintiff's action from which judgment plaintiff appeals.
The undisputed facts of this case are set forth in an agreed stipulation thereof entered into between the parties and filed of record herein. Said stipulation shows that subject property constitutes a portion of the bed of Lake Barre, a navigable waterway situated in Terrebonne Parish. Defendant Lessors trace perfect unbroken record title to the property in controversy to a patent issued by the State of Louisiana to their predecessor in title, Houma Fish & Oyster Co., Ltd., under date of December 6, 1899, which said patent was duly recorded in the Conveyance Records of Terrebonne Parish December 12, 1899. In addition to the aforesaid patent from the State of Louisiana, the original patentee, Houma Fish & Oyster Co., Ltd., also obtained a transfer of the property in dispute from the Board of Commissioners of the Atchafalaya Basin Levee District dated and recorded on the same date as the patent thereof received from the State of Louisiana, namely, December 6, 1899 and December 12, 1899, respectively. The patent issued by the State to the author in title of defendants-lessors was, as required by law, duly signed by the Governor of this State and the Register of the State Land Office. Besides being filed in the Conveyance Records of Terrebonne Parish, the patent upon which defendants rely was also duly filed of record in the State Land Office of this state. Since the issuance of the patent on December 6, 1899 covering the property in dispute herein to the present time, defendants and their predecessor in title, Houma Fish & Oyster Co., Ltd., have paid all taxes assessed against the property in question. From the date of the issuance of said patent by the state, namely, December 6, 1899, until July 23, 1958 (the date of filing of the present suit) neither the State of Louisiana nor any agency thereof sought to annul either the patent issued by the state or the transfer from the Board of Commissioners of the Atchafalaya Basin Levee District to defendants' author in title.
Simply stated, the sole issue before the court is whether the State of Louisiana has a valid claim of ownership of that portion of the bed and bottom of Lake Barre, a navigable waterway patented to defendants' author in title on December 6, 1899 or whether, as contended by defendants, the state's claim of title thereto is forever precluded and barred by virtue of the prescriptive effect of Act 62 of 1912, presently LSA-R.S. 9:5661 hereinbefore set forth, and the firmly established jurisprudence of this state commencing with State v. Sweet Lake Land & Oil Co., 164 La. 240, 113 So. 833, and culminating in California Co. v. Price, 225 La. 706, 74 So.2d 1.
Learned counsel for the state readily concedes California Co. v. Price, supra, is squarely in point but contends that said decision as well as State v. Sweet Lake Land & Oil Co., supra; Realty Operators v. State Mineral Board, 202 La. 398, 12 So.2d 198; O'Brien v. State Mineral Board, 209 La. 266, 24 So.2d 470, and Humble Oil & Refining Co. v. State Mineral Board, 223 La. 47, 64 So.2d 839, were all incorrectly decided and should be overruled. In this regard we take the liberty of quoting the following explanation of the state's position as set forth in the brief filed herein on behalf of plaintiff:
"This case is squarely in point with the case of The California Company v. Price, 225 La. 706, 74 So.2d 1. In that case a patent had been issued on lands which included the bed of Grand Bay. The private claimants pleaded Act 62 of 1912 as a bar to the state's claim to the bed of Grand Bay. Act 62 of 1912, as quoted in the Price case was as follows:

*899 "`* * * That all suits or proceedings of the State of Louisiana, private corporations, partnerships or persons to vacate and annul any patent issued by the State of Louisiana, duly signed by the Governor of the State and the Register of the State Land Office, and of record in the State Land Office, or any transfer of property by any sub-division of the State, shall be brought only within six years of the issuance of patent, provided, that suits to annul patents previously issued shall be brought within six years from the passage of this Act.'
"The Supreme Court held that the patent issued to the private claimants was `tacitly confirmed and rendered unassailable by the inaction of the State and the provisions of Act 62 of 1912', 74 So.2d 7, and on rehearing, that when `the stated time elapsed without action, the curative provisions of the law became operative and rendered all such patents unassailable,' 74 So.2d, 14.
"It is the position of the State that the Price case was decided incorrectly. The importance of this matter cannot be overestimated. At issue is the broad question of the effect of all errors made in State transfers of immovables to private owners, and specifically at issue is the question of private ownership of navigable waterways."
Learned counsel for the state has ingeniously phrased the state's present contentions in terms which at first glance would appear to be original, novel and not previously adjudicated. However, careful examination and analysis of the numerous arguments advanced on behalf of plaintiff reveal the basic position of the state to be that the beds of all navigable waters are the property of the State of Louisiana by virtue of the state's inherent sovereignty; that as a matter of state law and declared public policy beds of navigable waters are not susceptible to and are incapable of private ownership; that any attempt by the state to part with title to the beds or bottoms of navigable waterways is an absolute nullity; that the prior decisions of the Supreme Court of this state holding that Act 62 of 1912 applies to void patents were erroneous for the Act intended to except from its operation transfers by the state amounting to an absolute nullity and finally, that the Price case, supra, and the previous decisions upon which it rests have resulted in a line of jurisprudence which may lead to absurd consequences and which this court now possesses the authority to overrule and accordingly, we should declare said jurisprudence to have been confected in error and reverse same.
We shall first consider the astounding contention of the state that this court now possesses power and authority to overrule or set aside a line of jurisprudence heretofore established, reaffirmed and reiterated by the Supreme Court of the State of Louisiana. This utterly incredible argument is founded on the ground that with adoption of Article 7, Section 29 of the State Constitution, LSA, as proposed by Act 561 of 1958, ratified and approved by the electorate November 4, 1958, this court and the three other intermediate Appellate Courts of this state are presently courts of final decision and, as such, possess authority to overrule any line of jurisprudence found to have been established in error.
However complimentary and alluring such argument may be, we are not thereby rendered unaware of its sheer fantasy and total lack of reason or legal foundation.
The present authority and appellate jurisdiction of the Supreme Court of this state is prescribed in Article 7, Section 10 of the Constitution of Louisiana, as amended by Act 561 of 1958, ratified November 4, 1958. Said constitutional provision commences with the following:
"The Supreme Court has control of, and general supervisory jurisdiction over all inferior courts."
*900 We detect no language in either Section 10 or Section 29 of Article 7 of the State Constitution as presently amended even remotely suggestive of the proposition the several intermediate Appellate Courts are free to disregard prior pronouncements of the Supreme Court of this state. It is too clear to admit of argument that one of the primary functions of a superior court whether acting under its direct appellate or supervisory jurisdiction via writ is to enumerate definitive interpretations of law binding upon and controlling subsequent decisions of all courts inferior thereto. It is an elementary, basic principle of law that inferior courts are bound by the decisions of superior supervisory tribunals. We do not presume to possess such authority suggested by learned counsel for the state. Moreover, extended to its logical conclusion, the position advocated by the state herein would sanction a situation under which each of the four intermediate Appellate Courts of this state would possess independent, supreme final authority leading to the possibility of four different yet equally authoritative interpretations of any given legal proposition. Even the totally uninitiated should be readily aware of the utter chaos and confusion which would result from such a situation. It follows that the state's position in this regard is absolutely devoid of merit.
Notwithstanding the meticulous painstaking effort of learned counsel for the state to attempt to phrase the state's position herein in terms which may appear to present issues not heretofore adjudicated, it is evident that in final analysis the position of the state is identical to the position assumed and rejected by the Supreme Court in California Co. v. Price, supra, and the decisions upon which said case is predicated. Stripped of all attempted camouflage, bared of all legal contortions, and exposed to its underlying foundation, the contentions of the state herein are identical with those adversely decided to the state's interest in California Co. v. Price and the other decisions which will hereinafter be considered.
In essence the state's contention may be said to be dual, namely: (1) beds of navigable waters belong to the state and are not susceptible to or capable of private ownership consequently any attempt to dispose of such property is an absolute nullity and any patent purporting to convey such property is not merely voidable but void ab initio, and (2) Act 62 of 1912 was not intended to be all inclusive but contemplates exceptions thereto among which exceptions are patents void in their inception.
Although in State v. Sweet Lake Land & Oil Co., 164 La. 240, 113 So. 833, 839, the court was dealing with the bed of a non-navigable waterway, the Supreme Court in disposing of the state's contention the patents were void ab initio insofar as they purported to convey to the patentee the bed of Sweet Lake, said:
"* * * the patents were signed by the Governor and by the register of the state land office, and were recorded in the state land office, and purported to convey an area of land described so as to embrace the bed of the lake, and that is all that the act of the Legislature required in its declaration that such patents should be deemed valid and unassailable after 6 years."
We also note in the Sweet Lake case, supra, the following holding of the Supreme Court with respect to the state's right to collaterally attack a patent apparently valid on its face:
"There seems to be no doubt about the proposition that a land patent, if not void on its face, is not only a conveyance of the title for the land, but is in the nature of an official declaration by that department of the government in which the sale of the public lands is intrusted by law that all of the requirements preliminary to the issue of the patent were complied *901 with, and that declaration, or presumption, is not open to rebuttal in an action at law against an innocent transferee of the title from the patentee."
In Realty Operators v. State Mineral Board, 202 La. 398, 12 So.2d 198, 202, plaintiff therein sought an injunction prohibiting defendant from granting a mineral lease on the bed and bottom of Lake Hatch in Terrebonne Parish. After finding as a fact that Lake Hatch was situated within the area encompassed in the state's patent to plaintiff's predecessor in title, the court in considering the question of the navigability of Lake Hatch, stated:
"The answer to this contention is that the issue of navigability of Lake Hatch is of no importance to the decision in this case because, whether it be navigable or not, defendants' right to question the validity of the patents issued to plaintiff's ancestors in title has been foreclosed by failure to file suit within six years from the passage of Act No. 62 of 1912. See State v. Sweet Lake Land & Oil Co., 164 La. 240, 113 So. 833. Assuming, for the sake of argument only, that the lake was navigable in fact in 1812 and that, therefore, the State was the owner of its bed and bottom by virtue of its sovereignty, there was no restraint, constitutional or otherwise, placed upon the State at the time the patents were issued which prevented it from disposing of said bed or bottom by patent to private individuals."
In considering the effect of Section 2, Article 4 of the Constitution of 1921 upon the right of the state to dispose of the bed of Lake Hatch if same were navigable, the court assuming said body of water to be navigable, declared:
"The lake is admittedly a fresh-water lake not connected with any arm of the sea and, consequently, does not fall within the prohibitions contained in Acts No. 106 of 1886, No. 153 of 1902 and No. 52 of 1904.
"It was not until the enactment of the Constitution of 1921 that the people themselves forbid, in Section 2 of Article IV, the Legislature from alienating or authorizing the alienation of the fee of the bed of any navigable stream, lake or other body of water, except for purposes of reclamation. This section of Article IV of the Constitution also provides that in all sales of state property the mineral rights shall be reserved. In interpreting that constitutional limitation, this court has decided that it operates prospectively only and does not apply to conveyances of mineral rights prior to the enactment of the Constitution of 1921. See Barnett v. State Mineral Board, 193 La. 1055, 192 So. 701, and Standard Oil Co. v. Allison, 196 La. 838, 200 So. 273. The same observations are pertinent to a patent issued by the State prior to 1921 under which the bed of a navigable fresh-water lake has been conveyed."
Following the decision in Realty Operators v. State Mineral Board, supra, the Supreme Court had occasion to again consider the problems herein presented in O'Brien v. State Mineral Board, 209 La. 266, 24 So.2d 470, wherein the state advanced the same identical contentions presented herein. As reflected in the opinion in the O'Brien case, the state therein maintained:
"The State Mineral Board, in its answer, admitted the execution of the lease to the Pure Oil Company and alleged that there is included in the lease a navigable stream known as Snake Bayou, two navigable lakes known as Snake (or Prehan) Lake and Willow Lake, and an unnamed navigable stream flowing between Snake Bayou and Willow Lake; that all these bodies of water were navigable in 1812 and in 1883, and therefore were `public things' under the laws of the State and insusceptible of private ownership, and that if the *902 petitioners or their authors in title had received any patents from the State of Louisiana to the area including the lakes and streams mentioned that there was written into those patents by necessary implication a reservation of title in favor of the State of Louisiana to the beds and bottoms of all navigable lakes and streams in the area patented."
In the O'Brien case, supra, the Supreme Court reaffirmed the ruling in the Sweet Lake case to the effect that a state patent, not void on its face, may not be collaterally attacked. Further the Supreme Court therein reaffirmed the doctrine of the Sweet Lake and Realty Operators cases to the effect that the prescription provided by Act 62 of 1912 applies to patents covering the transfer of beds of navigable waters as well as non-navigable waters. Of particular application to the instant case is the following language appearing therein:
"Whether this Snake Bayou, Snake Lake, etc. were navigable or not in 1812 and 1883 cannot be definitely determined from the record. Since the State Mineral Board's attack on the Watkins patent is barred by prescription, further consideration of the record's meager and inconclusive evidence on past and present navigability of these out-of-the-way waters is unnecessary.
"In the case of Realty Operators, Inc. v. State Mineral Board, 202 La. 398, 12 So.2d 198, 202, the defendant contended ` * * * that the evidence shows that Lake Hatch is a navigable body of water and that the judge of the lower court erred in failing to admit certain evidence touching on the question of navigability of the lake which was tendered by the defendants.' (Italics ours.) The Supreme Court, in passing upon this contention, said: `The answer to this contention is that the issue of navigability of Lake Hatch is of no importance to the decision in this case because, whether it be navigable or not, defendants' right to question the validity of the patents issued to plaintiff's ancestors in title has been foreclosed by failure to file suit within six years from the passage of Act No. 62 of 1912. See State v. Sweet Lake Land & Oil Co., 164 La. 240, 113 So. 833. Assuming, for the sake of argument only, that the lake was navigable in fact in 1812 and that, therefore, the State was the owner of its bed and bottom by virtue of its sovereignty, there was no restraint, constitutional or otherwise, placed upon the State at the time the patents were issued which prevented it from disposing of said bed or bottom by patent to private individuals.'"
The opinion in the O'Brien case, supra, terminated with the following statement relative to the right of the state to collaterally attack a patent after expiration of the six-year period provided for in Act 62 of 1912:
"The State Mineral Board had no right to make a collateral attack on this Watkins patent in a proceeding against a remote transferee, and in fact, had lost, through prescription, its right to attack the patent in any action against any party."
Miami Corporation v. State, 186 La. 784, 173 So. 315, so heavily relied upon by esteemed counsel for the state was distinguished by the Supreme Court in the O'Brien case in the following language:
"The Miami case is consistent with the sound public policy on navigable waters as followed in the Constitution of 1921, which specifically forbids the agencies of the State of Louisiana from conveying any future title to the bottoms of navigable waters.
"The present case and the State v. Sweet Lake Land & Oil Co. and Realty Operators, Inc. v. State Mineral Board cases, supra, represent the limited instances *903 in which the State officers issued patents to unimportant lake and stream beds when there was no constitutional prohibition. In conformity with this State's consistent policy to stabilize real estate titles and discourage continual lawsuits over ancient infirmities of title, the Legislature provided by Act No. 62 of 1912 that the State should attack such patents within the six year prescriptive period therein provided or be forever barred."
The "Duck Lake case" (Humble Oil & Refining Co. v. State Mineral Board, 223 La. 47, 64 So.2d 839, 840) involved navigable Duck Lake upon which plaintiff held mineral leases from both the state and a private corporation known as "Salt Domes, Inc.". Upon discovery of oil plaintiff lessee deposited with the court royalties due and interpleaded its lessors. The original transfer from the state was to the Atchafalaya Basin Levee District. The same contentions made by the state in the instant case were made therein, namely, the state maintained it owned the bed and botton of Duck Lake by virtue of its inherent sovereignty; that there could be no transfer thereof from the state or any of its agencies and no such transfer could be validated through the provisions of Act 62 of 1912.
Notwithstanding the state's contentions, the court ruled in favor of Salt Domes, Inc., saying:
"By an unbroken line of jurisprudence this Court has held that the failure of the State to institute suit to annul a patent or transfer of land by one of its sub-divisions within six years from its date, or within six years from the effective date of Act 62 of 1912 when the patent or deed had been executed prior to its passage, operates as a tacit confirmation which thereafter renders the title unassailable. State v. Sweet Lake Land & Oil Co., 164 La. 240, 113 So. 833; Realty Operators v. State Mineral Board, 202 La. 398, 12 So.2d 198, and O'Brien v. State Mineral Board, 209 La. 266, 24 So.2d 470.
"Counsel for the State acknowledge the force of these pronouncements but it is professed that they are inapplicable in this instance for the reason that, in the cited cases, the Court was dealing with lands which the State had been authorized to sell, whereas, here it is contended that the State could not transfer the bed of navigable waters under Act No. 97 of 1890 as that statute sanctioned only the conveyance to the Levee District of lands properly acquired from the United States as swamp and overflowed lands and those forfeited for non-payment of taxes.
"The answer to this proposition is that, inasmuch as the bed of Duck Lake was unquestionably embraced in the transfer of vacant lands executed on May 18th 1901 by the Register of the State Land Office and the State Auditor in favor of the Atchafalaya Basin Levee District and inasmuch as this property was taken out of the public domain by conveyance of said Levee District to private parties, it is a matter of no importance whether the deed of the public officers was beyond the powers vested in them by Act No. 97 of 1890. The transfer being an accomplished fact and the property having been acquired by private transferees, the State was accorded six years to contest the matter. Failure to institute suit within that time constituted a ratification of the action of its officers in disposing of the property. See Atchafalaya Land Co. v. F. B. Williams Cypress Co., 146 La. 1047, 84 So. 351, 358."
If the foregoing authorities do not constitute an insurmountable obstacle to the state's claim herein, the clincher and absolute barrier is to be found in California Co. v. Price, 225 La. 706, 74 So.2d 1, 3., which involved a factual situation identical *904 to the one with which we are presently concerned, namely, a state patent conveying the bed of Grand Bay, a navigable waterway situated in Plaquemines Parish. In the Price case the claims of the state are set forth as follows:
"The principal contention of the State is that the bed of Grand Bay (a navigable arm of the sea when Louisiana was admitted into the union in 1812 and then owned by it by virtue of its inherent sovereignty, all as above shown) is insusceptible of private ownership and has never been disposed of validly."
After setting forth the reliance of the transferee of the original patentee on the provisions of Act 62 of 1912, the answer of the state thereto is stated to be:
"The State, countering, insists that such statute is not applicable here. In this connection it argues first that the bed of Grand Bay is classed as `sea shore' which according to the Louisiana Statutes AnnotatedCivil Code, Articles 450 and 482, constitutes `common property' available to all persons and insusceptible of private ownership. At the same time it concedes (both in brief and in oral presentation of the case), however, that prior to 1921 the Legislature had the power to change the mentioned codal or legislative declarations and to make such property alienable to individuals. In effect its position, therefore, is that the property would have been susceptible of private ownership had it not been for the mentioned codal articles; and that because of the prohibition therein contained the bed of Grand Bay was inalienable and the prescriptive statute relied on has no application."
In the Price case, the Supreme Court sustained the position of defendant landowners as against the state and upheld the prior jurisprudence quoting at length significant portions of the "Duck Lake case".
In California Co. v. Price, supra, the Supreme Court also disposed of the state's contentions the so-called "Oyster Statutes" herein relied upon by the state prevented the sale of the beds and bottoms of navigable streams by pointing out that said so-called "Oyster Statutes" expressly except and exempt from their operations lands previously sold or conveyed by special grants or by sale by the state. It was also held in the Price case, supra, that no conflict exists between Act 62 of 1912 and the so-called "Oyster Statutes" considering the recitals in said latter acts to the effect water bottoms shall remain the property of the state are deemed prospective in operation and, as such, applicable only to property not theretofore conveyed by the state. The court again acknowledged that Act 258 of 1910 (also relied upon by the state in the instant case) recognizes the validity of prior alienations of water bottoms, citing in support thereof State v. Board of Commissioners of Caddo Levee District, 188 La. 1, 175 So. 678. In the original opinion in the Price case it was clearly and expressly held that the patent in question being regular on its face and having been properly recorded was tacitly confirmed and rendered invulnerable to attack by virtue of the inaction of the state and the operation of the provisions of Act 62 of 1912.
On rehearing granted in the Price case the court considered the about face argument of the state wherein the state reversed its position from the contention it acquired Grand Bay in its sovereign capacity by virtue of the navigability of said waterway at the time of the state's admission to the union, to the contention Grand Bay was not then navigable but rather was acquired by the state through subsequent erosion of the bank under the ruling pronounced in Miami Corporation v. State, 186 La. 784, 173 So. 315. The court found no conflict or inconsistency between the doctrine of the Miami case and the rule established in the Sweet Lake, Realty Operators, O'Brien and Duck Lake cases, *905 supra. In answering the argument of the state on rehearing, the court said:
"* * * In assailing the patent, counsel for the State claim that the Governor and Register of the State Land Office were without authority to include in the conveyance those submerged lands. However, they acknowledge, as indeed they must, that the Legislature had the right to sanction the conveyance of such lands, notwithstanding any codal concept of public policy to the contrary, as there was no constitutional restraint on the power of the Legislature to dispose of the navigable water bottoms of the State prior to the adoption of the Constitution of 1921. Barnett v. State Mineral Board, 193 La. 1055, 192 So. 701; Standard Oil Co. v. Allison, 196 La. 838, 200 So. 273 and Realty Operators v. State Mineral Board, supra. Hence, it follows that, inasmuch as the Legislature had the right to authorize the issuance of a patent to the submerged lands, it was likewise empowered to subsequently ratify the action of the Governor and Register of the State Land Office in granting such a patent. And this, we found in our original opinion, is exactly what the Legislature did by the enactment of Act No. 62 of 1912."
On rehearing, the Supreme Court in the Price case, supra, also considered the state's contention that the Miami case, certain Articles of the Revised Civil Code and the Oyster Statutes, construed individually and collectively, should be regarded as excepting and exempting patents covering bed and bottoms of navigable waters from the effect of Act 62 of 1912. Deciding this contention adversely to the state, the Supreme Court employed the following language:
"Applicable, here, is that fundamental canon of statutory construction set forth in Article 13 of the LSA-Civil Code that, when a law is clear and free from all ambiguity, `the letter of it is not to be disregarded, under the pretext of pursuing its spirit'.
"But further than this, by delving into the spirit which prompted the passage of Act No. 62 of 1912, we experience no difficulty whatever in deducing that the Legislature intended that the Act was to be all-inclusive, in conformity with the language used therein. It takes no more than an examination of the various Oyster Statutes to make it evident that the Legislature of 1912 was intimately acquainted with the public policy of the State to retain title to all navigable water bottoms. This fact is made even more apparent by a reading of Act No. 258 of 1910, which was a general law reaffirming the State's ownership of bayous, lagoons, lakes, bays, rivers and the beds thereof. See State v. Board of Com'rs of Caddo Levee District, 188 La. 1, 175 So. 678. Section 2 of that statute, which pertains exclusively to navigable waters, contains a proviso that the law ` * * * is not intended to interfere with the acquisition in good faith of any waters or the beds thereof transferred by the State or its agencies prior to the passage of this Act; * *'. Accordingly, it is only reasonable to conclude that the Legislature, in enacting Act No. 62 of 1912, evinced, as part of its general overall purpose, the design of confirming these titles to navigable water bottoms, the existence of which was recognized in Act No. 258 of 1910, provided their validity was not contested within the prescribed six-year period.
"Since it is plain, as above shown, that the Legislature of 1912 was well aware of the policy of the State to retain title to all navigable water bottoms (this fact being admitted by counsel for the State), we think it manifest that it employed the broad language and sweeping terms contained in Act No. 62 of 1912 deliberately, so that all *906 doubts respecting the validity of any patent previously issued, in the form prescribed by the statute, would be set at rest, if the transfer was not assailed within the six-year period. Albeit, if the Legislature had the intention of excluding patents covering navigable water bottoms from the effect of the law, it would have been a very easy matter to have done so by an appropriate exception."
In view of the settled jurisprudence repeated, reiterated and reaffirmed on several occasions by the Supreme Court of this state in unmistakable language decisive of the issues herein tendered by plaintiff, we unhesitatingly conclude the trial court properly sustained defendants' plea of prescription and dismissed plaintiff's suit.
Judgment affirmed.