*1052
 
 ODOM, Justice.
 

 The question involved in this suit is whether the Atchafalaya Basin Levee District, created by Act 97 of 1890, owns the mineral rights in or on the NE % of Sec. 67, T. 9 S., R. 11 E., in the Parish of Iberville, or'whether those mineral rights are owned by the .plaintiff, Schwing Lumber & Shingle Company, Inc., which owns the land in fee.
 

 Claiming to own the mineral rights, the Levee Board adopted a resolution on September 3, 1941, which authorized the publication of a notice inviting bids for a mineral lease covering the land. The Schwing Lumber Sr Shingle Company, claiming to own the land in fee as well as the mineral rights, brought the present suit to enjoin the Levee Board from advertising or accepting bids for such a lease. There was judgment in the district court recognizing the plaintiff to be the owner of the mineral rights and enjoining the Levee Board from proceeding further in its efforts to lease the property. From this judgment the Levee Board appealed.
 

 Counsel for the Levee Board has not favored us with a brief in support of the Board’s contentions, but he did' argue the case orally. As we recall counsel’s argument, he did not seriously contend that the plaintiff does not own this land. His argument was that plaintiff acquired no valid title to the land until February 6, 1930, when the Levee Board executed a quitclaim deed to the Atchafalaya Land Company, Ltd., plaintiff’s author in title, conveying the land by specific description. At that time, counsel says, the Levee Board could not convey the mineral rights in the land because Section 2, Article IV of the Constitution of 1921, provides, among ‘other things, that:
 

 “In all cases the mineral rights on any and all property sold by the State shall be reserved, except where the owner or other person having the right to redeem may buy or redeem property sold or adjudicated to the State for taxes. This, however, shall not prevent the leasing of such lands and rights for mineral or other purposes.”
 

 It is conceded by counsel for plaintiff that, if the lumber company had no valid title to the land prior to the date on which the above-mentioned quitclaim was executed by the Levee Board, it does not now own the mineral rights. Their contention, however, is that valid title to the land as well as to the minerals was vested in plaintiff’s author in title long before the Constitution of 1921 was adopted.
 

 The facts are not disputed. The land involved was acquired by the State from the United States under certain acts of Congress adopted in 1849 and 1850, ordinarily referred to as' the “Swamp Land Grants”-43 U.S.GA. § 982 et seq. Sebastian Hiriart acquired the land from the State by patent issued May 26, 1888, Hiriart failed to pay the taxes due on the land for the year 1897, and it was forfeited to the State for the unpaid taxes on June 18, 1898. The forfeiture was evidenced by a deed, regular in form, executed by the tax collector and recorded in the conveyance records of Iberville Parish, where the land is situated, on July 18, 1898. The land was never redeemed by Hiriart or anyone else.
 

 
 *1054
 
 The Atchafalaya Basin Levee District wás created hy Act
 
 97
 
 of 1890. Section 11 of that act provided that, in order to provide additional means to carry out the purposes of the act, all lands embraced within the limits of the Levee' District which then belonged to the State, or which might thereafter be acquired by it, “shall be, and the same hereby are given, granted, bargained, donated, conveyed and delivered unto said Board of Levee Commissioners of the Atchafalaya Basin Levee District whether said lands or parts of lands originally granted by the Congress of the United States to this State or whether said lands have been, or may hereafter be, forfeited to, or bought in by or for, or sold to the State, at tax sales for non-payment of taxes”.
 

 The land here involved is embraced within the limits of the Levee District as established by the act. Section 11 of the act further provides that all tax debtors whose lands had been forfeited to the State for the non-payment of taxes might at any time within six months after the passage of the act redeem the lands upon paying to the Treasurer of the State all taxes, interest, costs, and penalties due to the date of redemption; and that, after the expiration of the redemptive period, it should be the duty of the Auditor and the Register of the State Land Office to convey in the name of the State to the Board of Levee Commissioners “by proper instruments of conveyance the lands hereby granted or intended to be granted and conveyed to said board, whenever from time to time said Auditor and said Register of the State Land Office, or either of them, shall be requested to do so by said Board of Levee Commissioners, or by the president thereof”.
 

 On September 21, 1899, the land was formally transferred to the Levee District by a “proper [instrument] of conveyance”. The instrument was signed by the auditor alone, but this informality was cured by Act 316 of 1926. Therefore, the Levee District’s title to the land from the State is not questioned. The act creating the Levee District specifically authorized it to make such disposition of its property as it might see fit.
 

 On July 9, 1900, the Board of Commissioners of the Levee District entered into a contract with Edward Wisner and John M. Dresser, .which contract contains the following stipulation:
 

 “The party of the first part [the Levee District] sells, transfers and delivers, without warranty and without recourse, and selling. only such right, title, and interest as it has, but with subrogation of all rights, claims and demands of whatsoever nature against former proprietors, including the right to claim and recover damages from trespasses, unto .the parties of the second part [Wisner and Dresser],, who purchase jointly, the interest of each to be equal, the following described property, to wit:
 

 “All the lands donated, ceded and transferred by Act of the Legislature to the said party of the first part, to include all lands sold for taxes at this date but as yet not deeded to the State or to said party of the first part, but not to include
 
 *1056
 
 lands hereafter accruing to the State at tax sale or-to said party of the first part otherwise than by tax sales already made, to include, in other words, only lands at this date owned by said party of the first part, or to which said party of first part can at this date lay just claim, and also all lands heretofore sold at tax sale but for which a title has not been made to the State.”
 

 The land here involved belonged to the Levee Board at the time this contract was entered into. This contract does not convey any lands by specific description, but conveys “all lands donated, ceded and transferred by Act of the Legislature” to the Levee District. Clearly the Levee Board intended to convey to Wisner and Dresser all the land which it then owned.
 

 The contract stipulates that the sale is made “for and in consideration of the price and sum of One Hundred and Twenty Thousand Dollars of which Twenty Five Thousand Dollars has been this day paid cash, for which receipt is given, and the remainder, namely the sum of Ninety Five Thousand Dollars is payable one half thereof in six months from this date and the other half thereof in twelve months from this date, without interest”.
 

 It is further provided in this contract that “the present agreement is not to be a completed or perfected sale but to be in the nature of an agreement to sell [until] the full sum of one hundred and twenty thousand dollars due under this agreement shall have been paid, but that, in the meantime, the said party of the first part is to make complete and final title to such specific pieces of land embraced by this agreement and to such persons as said parties of second part designate and at such time as said parties of second part may wish, provided that the price of such sales is to be paid direct to said party of the first part and be not less than one dollar per acre for tax lands and other high lands and twenty five cents per acre for marsh lands”.
 

 It will be noted that the parties to the above instrument stipulated that it was not understood “to be a completed or perfected sale”, but was understood to be “in the nature of an agreement to sell”, and that the sale would not be perfected until the entire purchase price of $120,000 was paid in full.
 

 Documentary evidence introduced and filed at the trial shows definitely that the balance due on the purchase price was paid to the Levee Board by Wisner and Dresser at some time prior to 1904.
 

 Pursuant to its agreement to make title to such specific pieces of land as were included in the agreement with Wisner and Dresser to such persons as might be designated by the purchasers, the Levee District, on June 1, 1901, sold, transferred, and delivered to the “South Louisiana Land Company, Ltd.”, of New Orleans, “all of the lands hereinafter described, situated in the Parishes of St. Martin and Iberville, and being a part of the lands contracted to be sold by the Board of Levee Commissioners of the Atchafalaya Basin Levee District, to Edward Wisner and J. M. Dresser, on or about the 9th day of July, 1900”.
 

 
 *1058
 
 This contract of sale stipulates that the consideration was the sum of $10,000 cash in hand paid, the receipt of which was acknowledged, “payment having been made' in full upon said Contract by the said
 
 ‘Edward Wisner1
 
 and
 
 ‘J. M. Dresser’,
 
 to said Board of Commissioners of the Atchafalaya Basin Levee District”.
 

 This deed provides that it is intended to convey “all of the Tax Lands in the towns [meaning townships] mentioned in this deed”. One of the townships mentioned in the deed is T. 9 S., R. 11 E., in which the land involved is located.
 

 By an instrument dated April 11, 1904, the Levee Board joined by John M. Dresser and Edward Wisner, confirmed the prior sale made on June 1, 1901, to the South Louisiana Land Company. This instrument, after referring to the contract which the Board entered into with Wisner and Dresser on July 9, 1900, specifically recites that ’ the Board “has received the consideration in full cash” mentioned in that sale.
 

 On December 31; 1908, the South Louisiana Land Company conveyed to the Atchafalaya Land Company, Ltd., all of the land owned by it in Iberville Parish, the deed reciting that it was intended to convey all of the landed interest owned by the vendor in that parish, whether definitely described or not. The land here involved is in Iberville Parish.
 

 The Atchafalaya Land Company, Ltd., has been recognized by this court as the assignee of the South Louisiana Land Company and of Wisner and Dresser in two decisions. Atchafalaya Land Co., Ltd., v. Grace, 143 La. 637, 79 So. 173; Atchafalaya Land Co., Ltd., v. F. B. Williams Cypress Co., 146 La. 1047, 84 So. 351.
 

 On February 6, 1930, the Atchafalaya Land Company, Ltd., in liquidation, sold the land here involved by specific description to the Schwing Lumber & Shingle Company, Inc., the plaintiff in this case.
 

 On the same day, the Atchafalaya Basin Levee District, defendant here, by and through its president, who was duly authorized, executed an instrument which is referred to as a quitclaim deed, which recites that the Levee Board “does hereby grant, bargain, transfer and deliver unto Atchafalaya Land Co., Ltd., in Liquidation, * * * by quit-claim only, the following described land, to wit: North East Quarter of Section Sixty Seven (NE % Sec. 67) T 9 S R 11 E”. •
 

 This quitclaim deed contains the following stipulation:
 

 “The consideration of this transfer is a portion of the sum of One Hundred Twenty Thousand Dollars, cash in hand paid,
 
 under a contract entered into between the present vendors and Edward Wisner and John M. Dresser, on July 9, 1900,
 
 the Atchafalaya Land Company, Limited, being recognized as the assignees and representative of Wisner and Dresser and entitled to the deed herein set forth.
 

 "The present transfer is in compliance with the obligations entered into at the time of the sale aforesaid of all the lands within the Atchafalaya Basin Levee District, the payment having been made cmidr
 
 
 *1060
 

 completed in the year 1904.”
 
 (Italics are the writer’s.)
 

 This instrument bears the same date as the one by which the Atchafalaya Land Company, Ltd., transferred the same land to Schwing Lumber & Shingle Company, and the two instruments were recorded oi> the same day.
 

 Counsel for the defendant Levee Board argued before us that, prior to the date on which the Board executed this quitclaim, full and complete valid title to the land was vested in it; that, while the Board had theretofore entered into contracts with Wisner and Dresser and with others relating to the sale by blanket description of all the lands it had acquired from the State, which were all the lands it owned, as a matter of law it did not divest itself of title until it executed this quitclaim on February 6, 1930. Hence the further argument that the Board now owns the mineral rights in and on the land because, under Section 2, Article IV of the Constitution of 1921, it could not, when the quitclaim was executed, dispose of the land without reserving the mineral rights.
 

 The trial judge saw no merit in this contention. Neither do we. After referring in detail to the various contracts executed by the Levee Board and after reviewing the jurisprudence relating to the effect of such instruments and the admissions made therein, the judge said:
 

 “The ownership of the Board of Commissioners of the property involved herein, obviou-sly, terminated and ceased to exist on or before the year 1904. Thereafter, the said. Board was concerned or interested in any
 
 of the lands included in the said contract with Wisner and Dresser
 
 only to the extent of ftil filling its obligations of lending its aid to Wisner and Dresser and their transferees in perfecting a clear title to said lands or any part thereof ivhenever requested by Wisner and Dresser to do so."
 
 (Italics by the district judge.)
 

 We concur in the view expressed by him. The quitclaim deed shows on its face that it was executed by the Levee Board “in compliance with the obligations” which’it assumed in its contract with Edward Wisner and John M. Dresser on July 9, 1900, which obligation was, as expressed in that contract, “to lend itself with all its rights, powers and privileges and prerogatives to perfect its title or the title acquired under this agreement to all lands which it could have and the parties of the second part can now justly lay claim to,
 
 and to do so whenever so requested by the party of the second part”.
 

 The quitclaim deed recites that the consideration for making it “is a portion of the sum of One Hundred Twenty Thousand Dollars, cash in hand paid,
 
 under a contract entered into between the present vendors and Edward Wisner and John M. Dresser, on July 9, 1900,
 
 * * * the payment having been made and completed in the year 1904.” (Italics are the writer’s.)
 

 Clearly the purpose of this quitclaim deed was not to create or vest title in the Atchafalaya Land Company, Ltd., which company was, according to the instrument itself, “recognized as the assignees and representative of Wisner and Dresser and en
 
 *1062
 
 titled to the deed herein set forth”, but was to recognize, confirm and make certain the title which already vested in Wisner and Dresser and their assignees or transferees, and to comply with obligations long' before assumed.
 

 When the Levee Board entered into the contract with Wisner and Dresser on July 9, 1900, it was then the undisputed owner of the-land involved in this suit. While the land was not conveyed by specific description, it was included by the blanket description which conveyed all the tax lands then owned by the Board. Unquestionably the Levee Board intended to convey, and did convey, all the lands, which it owned.
 

 In this connection, it should be stated that the ruling of the' trial judge with reference to this title, in which ruling we concur, cannot affect the rights of third persons. Title to the land passed from the State to the Levee Board, from the Levee Board to Wisner and Dresser, and from Wisner and Dresser through mesne conveyances to the Schwing Lumber & Shingle Company, Ltd., the present claimant, and only the Levee Board is now claiming any interest therein.
 

 The contract entered into by the Levee Board with Wisner and Dresser on July 9, 1900, was not a sale, but an agreement to sell for a stipulated consideration, a part of which was paid in cash at the time the contract was entered into, complete title to vest when the balance of the consideration was paid. The balance of the consideration was paid, in accordance with the terms of the contract, prior to the year 1904.
 

 In the case of Lehman v. Rice et al., 118 La. 975, 43 So. 639, it was held that “A promise of sale amounts to a sale in the sense that it gives the purchaser the right to demand a specific performance of the obligation to transfer and deliver the property. Where the conditions have been performed, the legal title passes as of date' of the original agreement.” (Paragraph 1, Syllabus). See, also, Barfield v. Saunders, 116 La. 136, 40 So. 593.
 

 The ruling that, where the conditions have been performed, the legal title passes as of date of the original agreement was based upon Article 2041 of the Revised Civil Code, which provides that “The condition being complied with, has a retrospective effect to the day that the engagement was contracted; if the creditor dies before the accomplishment of the condition, his rights devolve on his heirs”.
 

 The ruling in' the cases of Barfield v. Saunders and Lehman v. Rice, supra, was reaffirmed in the case of Herndon v. Wakefield-Moore Realty Co., Inc., 143 La. 724, 79 So. 318. See, also, McCain v. Hicks et al., 150 La. 43, 90 So. 506.
 

 Under the facts disclosed by the record, and according to the rulings in the above cases, title to this land was vested absolutely in Wisner and Dresser and their transferees long prior to the date on which. this quitclaim deed was executed. And, as we have already stated, the purpose of the quitclaim deed was to recognize, ratify, make certain, and confirm the title to the
 
 *1064
 
 lands which it had previously conveyed to plaintiff’s authors in title, and the fact that this ratification deed was executed after the adoption of the Constitution of 1921 does not affect plaintiff’s title to the minerals, which were conveyed originally along with the surface rights. No argument is necessary to support the conclusion that this quitclaim or confirmatory act was intended to operate retrospectively. The document shows that on its face.
 

 The rulings in the following recent cases are pertinent to the issues here involved: Barnett v. State Mineral Board, 193 La. 1055, 192 So. 701; Standard Oil Co. v. Allison, 196 La. 838, 200 So. 273; State ex rel. Hyams’ Heirs v. Grace, Land Office Register, 197 La. 428, 1 So.2d 683.
 

 In the Barnett case, the plaintiffs sought to enjoin the State Mineral Board from granting a mineral lease on a tract of land cjaimed by them. Plaintiffs claimed to be the owners of the land by virtue of grants from the State to the Red River, Atchafalaya, and Bayou Boeuf Levee Districts. It was shown that the formal transfers of the land involved to the Levee Boards were not signed by both the Auditor and the Register of the State Land Office, as required by the act. The plaintiffs’ contention was that, even though those formal transfers by the State to the Levee Boards were not valid, the transfers had been ratified or validated by Act 316 of 1926. The contention of the State Mineral Board was that, even though plaintiffs’ title was made valid by the adoption of Act 316 of 1926, plaintiffs did not own the mineral rights because, at the time the act was adopted, the State was prohibited from disposing of any of its lands without reserving the mineral rights.
 

 In the course of our opinion we said [193 La. 1055, 192 So. 704]:
 

 “The statute does not convey any right or property to any person. It is merely a remedial or curative statute, or a statute of repose.”
 

 It was held that the plaintiffs were entitled to the mineral rights, and that the curative statute of 1926 merely perfected or clarified a possible defect in the grant to the Levee Boards, and that therefore the constitutional provision prohibiting the sale of mineral rights by the State had no application.
 

 So, in the case at bar, the contract between the Levee Board and Wisner and Dresser was completed prior to 1921, and the quitclaim or confirmatory deed merely furnished further evidence of the transfer previously made by the Levee Board to Wisner and Dresser and through them to the South Louisiana Land Company.
 

 In the Standard Oil Company case, the lands involved were granted
 
 to the
 
 Caddo Levee District by Act 74 of 1892, which created the district, and were sold by the Levee District with full warranty of title to private individuals in 1895, and from those individuals the lands through mesne conveyances passed into the hands of the defendant Allison. But formal conveyances from the State to the Levee Board were not obtained from the State Auditor and the Register of the State Land Office until after the adoption of the Constitution of 1921. The Levee Board contended that
 
 *1066
 
 it owned the mineral rights in the land because, at the time the formal transfers were executed by the Auditor and the Register of the Land Office, the lands could not be conveyed without reservation of the mineral rights, as provided by the Constitution of 1921. But the court held that, since the owners of the land had made repeated efforts to have these formal transfers made by the State officials prior to the adoption of the Constitution of 1921, they were entitled to the minerals.
 

 In State ex rel. Hyams’ Heirs v. Grace, plaintiffs brought a mandamus proceeding against the Register of the State Land Office to compel the issuance of a patent' to them for a tract of land on which certain lieu warrants had been located. The warrants were issued prior to the adoption of the Constitution of 1921, but were •not located on the property involved in the suit until a few years after that Constitution was adopted.
 

 The contention of the State officials was that a patent to the land could not be issued without reservation of the mineral rights. This contention was overruled by the court. We held that, since the original warrant was issued prior to the adoption ■of the Constitution of 1921, it was contemplated that it might be located at any time the holder saw fit, and that the provision of the Constitution of 1921, prohibiting the State from disposing of its lands without specifically reserving the mineral rights, had no application to cases of that lend.
 

 For the reasons assigned, the judgment appealed from is affirmed.