129 So.2d 302 (1961)
RYCADE OIL CORPORATION, Plaintiff-Appellee,
v.
BOARD OF COMMISSIONERS FOR the ATCHAFALAYA BASIN LEVEE DISTRICT, Defendant-Appellant.
No. 78.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1961.
Rehearing Denied May 9, 1961.
Certiorari Denied June 20, 1961.
Charles H. Dameron, Baton Rouge, for defendant.
Davidson, Meaux, Onebane & Donohoe, by Lawrence E. Donohoe, Jr., Lafayette, for plaintiff.
Before TATE, FRUGE and CULPEPPER, JJ.
TATE, Judge.
This is a declaratory judgment action brought to determine the ownership of the mineral rights in certain lands located within the defendant Board's levee district. The defendant admits that the plaintiff ("Rycade") owns the surface of these lands, but contends that the transfer of title by it to Rycade's author in title did not become effective until after the enactment of Article IV, Section 2, of the Constitution of 1921, LSA, which prohibits the sale of mineral rights owned by the State.[1] The defendant Board has appealed to this court from a judgment recognizing plaintiff as owner of the minerals and holding that title to the property, including the minerals, passed to Rycade's ancestor in title before the 1921 constitutional prohibition of the sale of minerals owned by the State.
The land involved in this suit was adjudicated to the state in 1883 for non-payment of taxes. By Act No. 97 of 1890 the Board of Commissioners for the Atchafalaya Basin Levee District was created, and all lands belonging to or that may thereafter belong to the State within the district were conveyed to the Board, including those *303 forfeited or sold to the State for non-payment of taxes. It was made "the duty of the Auditor and the Register of the State Land Office on behalf of and in the name of the State, to convey to the said Board of Levee Commissioners, by proper instruments of conveyance the lands hereby granted * * * whenever from time to time said Auditor and said Register of the State Land Office, or either of them, shall be requested to do so by said Board of Levee Commissioners, * * *."
The land herein claimed by plaintiff was not transferred by the State to the Board "by proper instruments of conveyance" until February 21, 1924 and recorded March 26, 1924. This formal conveyance from the State to the Board did not occur until after the adoption of the 1921 constitutional prohibition against alienation of State-owned minerals. The circumstance that the State was not divested of title until after 1921 forms the central basis of the appellant Board's contention that Rycade's ancestor in title did not acquire the minerals under the land.
Rycade traces its chain of title to certain instruments executed by the Board in 1900, 1901, and 1904, contending that 1924 acts merely confirm these earlier contracts, which became effective between the parties retroactively to 1904 at the latestthat is before the effective date of the 1921 constitutional prohibition against the sale of State-owned minerals.
On July 9, 1900 the Board executed a "deed" with Edward Wisner and John M. Dresser (Rycade's ancestors in title), providing "the party of the first part [the Board] sells, transfers and delivers, without warranty and without recourse, and selling only such right title and interest as it has, but with subrogation of all rights, claims and demands of whatsoever nature against former proprietors, including the right to claim and recover damages for trespasses, unto the parties of the second part [Wisner and Dresser], * * * the following described property, to-wit:All the lands donated, ceded and transferred by Act of the Legislature to the said party of the first part, to include all lands sold for taxes at this date but as yet not deeded to the State or to said party of the first part, * * *" The consideration recited in this contract was $120,000; and it was further stated that "the present agreement is not to be a completed or perfected sale but to be in the nature of an agreement to sell" until the consideration was paid.
On June 1, 1901 a "deed" was executed by the Board to the South Louisiana Land Company represented by J. M. Dresser, reciting "that this deed is a quitclaim deed without recourse." The lands involved were described as being a part of those lands contracted to be sold by the Board to Wisner and Dresser, and the deed was "intended to convey all of the tax land in the towns[hips] mentioned in this deed". It was further stated that "in case any tracts may be omitted by definite description," the Board agreed "to make deeds by definite description, from time to time, as said descriptions may be ascertained." The land involved in this suit was described in this deed only as: "The following State lands: * * *, in T. 9 S. R. 8 E * * *".
On April 11, 1904 a "confirmation of title" was executed stating that the consideration for the contract of July 9, 1900 had been paid in full. But not until February 5, 1924 did the Board, as anticipated by the contracts of 1900 and 1901, execute a contract "for the purpose of confirming the title to the lands conveyed," for the first time specifically describing the land in dispute as Lots 4, 9 and 10 of section 12, T. 9 S., R 8 E; this same described land being conveyed by formal act from the State to the Board on February 21, 1924, several days later.
The appellant Board contends with considerable force that title to tax lands transferred from the State to the Board by the 1890 act did not, by terms of the act itself, pass from the State to the Board until after formal conveyance executed by the State *304 Auditor and Register upon request of the Board; and that no such conveyance was made until 1924, or after the 1921 constitutional prohibition against sale of State minerals, when such conveyance was made for the sole purpose of conveying title to Rycade's ancestor in title; so that, because of the intervening effect of the constitutional provision, the State-owned minerals could not validly be conveyed to Rycade's ancestor in title.
As forceful and persuasive as we believe these contentions to be, nevertheless we find to be controlling the holding in Lum Chow v. Board of Commissioners for Lafourche Basin Levee Dist., 203 La. 268, 13 So.2d 857, wherein, in rejecting similar contentions, our Supreme Court stated, 13 So.2d 859 (citations omitted):
"It is the settled jurisprudence of this state that where one sells the property of another and later acquires title to the property, the title thus acquired enures to the benefit of his vendee * *
"But counsel for defendant contend this rule of after-acquired title by the vendor cannot apply to the defendant levee district because of the express provisions in the constitution making it mandatory that all mineral rights on property sold by the state be reserved. In support of this contention counsel argue that these grants of land not being grants in praesenti under the well settled jurisprudence of this state * * *, the title and possession thereof remaining in the state, subject to withdrawal by the legislature at any time up until they are certified to the levee districts, in accordance with the provisions of the acts creating them, The Lafourche Basin Levee District was powerless, after the adoption of the Constitution of 1921, to transfer the title to the minerals in question to its vendee.
"Counsel are in error in this contention, for in our recent decision in the Allison case, supra, [Standard Oil Co. of Louisiana v. Allison, 196 La. 838, 200 So. 273] where this court had for consideration the rights to the minerals in levee grants as between the levee district and its successor in title, the property not having been certified to the levee district by the state until after the adoption of the Constitution of 1921 although it was sold previous to that time, we said: `The law is well settled that where one in proper form, with warranty, conveys title of real estate to another and it subsequently develops that there some defects therein or that the seller did not have title to the property but later the imperfections are corrected in favor of the vendor or title thereto is acquired by the seller, that the subsequently-acquired rights or title enure to the benefit of the former vendee. * * *'
"Moreover, counsel apparently overlook the fact that this property was not sold by the levee district subsequent to the adoption of the Constitution of 1921, but instead, in 1907, long prior thereto, after due authorization had been given in a special resolution adopted by the board, and that the author in title of the plaintiffs took immediate actual and corporeal and physical possession thereof and continued to so hold it until the date of the institution of this suit, paying all taxes levied against the same, including those levied and collected by the levee district itself for its maintenance and support. When the state did certify the lands to the levee district, title to the minerals passed with the grant * * * and enured at once to the benefit of the levee district's original vendee and his successors in title, forever estopping the levee district from asserting title thereto. * *"
Able counsel for the appellant Board attempts to distinguish in several particulars the present facts from those upon which the Lum Chow holding is based, principally upon the basis that the 1900-1901 transfer of the property by the Board to the plaintiff's ancestor in title was not by a warranty *305 deed, but rather by a "quitclaim deed without recourse" and "without warranty", so that the after-acquired doctrine does not apply. See Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225.
As to this contention, we find no error in the trial court's conclusion that, although indeed labelled as without warranty, nevertheless the obligations of the Board in the 1900 and 1901 deeds, when read together, imposed upon it the obligations characteristic of a warranty deed insofar as applying the after-acquired title doctrine. For, by these instruments, the appellant Board transferred "all rights, claims and demand * * * of whatsoever nature against former proprietors" and obligated itself to perfect its title or the title acquired by appellee under the deed, and such deeds further state that they were "complete sale and delivery" of lands described and was intended to transfer "all of the tax land in the towns[hips] mentioned." Thus, for purposes of avoiding application of the after-acquired doctrine, in view of these obligations we do not find the technical labelling of these transactions as quit-claim or non-warranty deeds to be a valid basis for not applying the Lum Chow holding to the present facts. Cf. also, Gordy, Quitclaim Deeds in Louisiana, 23 Tul.L.Rev. 533 (1948).
Nor can we find of fundamental distinguishing significance, in view of the broad holding in the Lum Chow decision, other factual differences between the present case and those in the cited opinion.
In view of this conclusion, we find it unnecessary to discuss the various other contentions of the respective parties; and so, for the foregoing reasons, the judgment of the trial court is
Affirmed.
TATE, J., appends a concurring opinion.
TATE, Judge (concurring specially).
As the author of the majority opinion, the writer does not feel it inappropriate to express, for the benefit of any reviewing court, certain views which as obiter dicta should not properly form part of the court's opinion.
One contention we did not reach, in view of our conclusion that we must follow Lum Chow, is Rycade's suggestion that the constitutional prohibition against the State parting with its mineral interests does not apply to an agency of the State. This contention is based upon Stokes v. Harrison, 238 La. 343, 115 So.2d 373, which held that such constitutional prohibition did not apply as to lands purchased by the Beauregard Parish School Board from a private individual and subsequently re-sold by the Board to another private individual.
I doubt that our Supreme Court in the Stokes case meant to depart from the rationale of the First Circuit opinion affirmed, La.App., 109 So.2d 506, which essentially rested on the holding that the constitutional prohibition against the "State" parting with its mineral interests did not refer to a local school board, since, within the ordinary and popular meaning of the term, the "State" did not refer to such purely local subdivisions. A levee board, to the contrary, is an arm of the executive branch of the State government, performing a function of government on the overall State level; and the settled construction of the constitutional provision has always been to consider such levee boards as subject to the prohibition against sale of State-owned minerals, unless the conveyance took place before the effective date of the 1921 constitutional prohibition thereof. See, e. g., Lum Chow v. Board of Com'rs for Lafourche Basin Levee Dist., 203 La. 268, 13 So.2d 857; Schwing Lumber & Shingle Co., Inc. v. Board of Commissioners of Atchafalaya Basin Levee District, 200 La. 1049, 9 So.2d 409; Standard Oil Co. of Louisiana v. Allison, 196 La. 838, 200 So. 273; Barnett v. State Mineral Board, 193 La. 1055, 192 So. 701.
Perhaps a more fundamental reason for not construing the constitutional prohibition as applying only to the State and not including *306 the State agencies through which the "State" performs most of its governmental functions is, as counsel for the appellant suggests, that the constitutional prohibition would then be virtually meaningless and easily evaded, if officials were so inclined, by the simple expedient of transferring State lands to a State agency for re-sale to private individuals.
It is further to be observed that the principal reason given by our Supreme Court, in holding that (despite the constitutional prohibition) State lands can be transferred to a State agency without reservation of the minerals, is that the ownership of the minerals is after the transfer still in the State, although in the agency's name. State ex rel. Board, etc. v. Grace, 161 La. 1039, 109 So. 830, 832. As there stated in this decision, the state auditor and register were required to certify State lands including the minerals to a levee district, in the face of the constitutional prohibition, because "The land would, to all practical intents and purposes, still be the property of the state. The district could not sell it without reserving to itself the mineral rights, for the reason that its creator, for whom it holds, could not do so. We see no reason, therefore, in so far as the section of the Constitution cited is concerned, why the auditor and the register should not execute the conveyance [of state lands to a levee board]."
After serious study we have concluded that the Lum Chow decision provides a controlling precedent which we must follow, although there are several distinguishing factors the difference in the conveyances concerned; the circumstance that Rycade's ancestors in title (so far as the record is concerned) never went into actual and corporeal possession of the property sold to them by the Board; the circumstance that the settled jurisprudence, as to the assignees under the Wisner & Dresden contract at least (however similar its wording to that in the Lum Chow grant), was always that, until their claim was perfected by formal transfer of title from the State, their claim was always subject to limitation by intervening State legislation (State ex rel. Fitzpatrick v. Grace, 187 La. 1028, 175 So. 656) or intervening formal transfer of title by the State to another (Atchafalaya Land Co. v. Dibert, etc., 157 La. 689, 102 So. 871; Atchafalaya Land Co. v. F. B. William Cypress Co., 146 La. 1047, 84 So. 351; cf., Kemper v. Atchafalaya Basin Levee Dist., 214 La. 383, 37 So.2d 844).
Thus, there are here present distinguishing factors which may well justify our highest court, upon re-examination of the matter, to hold that the Lum Chow decision is not applicable to this case; although, in view of that opinion's broad holding, this court as in inferior state tribunal did not feel such factors to be sufficiently fundamental as to justify us to depart from the guide lines laid out in Lum Chow by our State Supreme Court.

On Application for Rehearing.

En Banc. Rehearing denied.
NOTES
[1] "* * * In all cases the mineral rights on any and all property sold by the State shall be reserved, except where the owner or other person having the right to redeem may buy redeem property sold or adjudicated to the State for taxes." * *