148 So.2d 138 (1962)
Frederic D. KING et al., Plaintiffs-Appellees,
v.
BOARD OF COMMISSIONERS FOR the ATCHAFALAYA BASIN LEVEE DISTRICT, Defendant-Appellant.
No. 716.
Court of Appeal of Louisiana, Third Circuit.
December 18, 1962.
Concurring Opinion December 21, 1962.
Rehearing Denied January 17, 1963.
Certiorari Denied March 12, 1963.
*139 Charles H. Dameron, Port Allen, Chaffee, McCall, Phillips, Burke & Hopkins, by E. Harold Saer, Jr., New Orleans, for defendants-appellants.
R. Richardson King and J. Mort Walker, Jr., New Orleans, Hall, Raggio & Farrar, by Thomas Hall and J. L. Cox, Jr., Willis & Willis, Lake Charles, by Earl H. Willis, St. Martinville, and James David McNeill, New Orleans, for plaintiffs-appellees.
Before TATE, FRUGE and SAVOY, JJ.
SAVOY, Judge.
This suit involves the title to real estate situated in St. Martin Parish, Louisiana. The litigation was originally instituted as an action in jactitation brought by Frederic D. King, et al., against the Board of Commissioners for the Atchafalaya Basin Levee District, hereinafter called "Levee Board". On behalf of the Levee Board an exception of want of possession to institute and maintain the action in jactitation was filed. The exception was submitted and was overruled by the court. Thereupon the Levee Board filed an answer, and, by way of reconventional demand, converted the suit into a petitory action. The original plaintiffs then filed an answer to the reconventional demand, and, among other defenses, pleaded acquisitive prescription of ten (10) and thirty (30) years.
After a trial on the merits, the district judge maintained the plea of thirty years prescription acquirendi causa filed by the original plaintiffs in the instant case. From this judgment, the Levee Board has appealed to this Court.
There are two (2) questions to be determined in the instant case:
(1) Who is the owner of the fee title to the property involved in this litigation?
(2) Who is the owner of the mineral rights or mineral servitude in, on and under the property involved in this litigation?
The land in controversy was adjudicated to the State of Louisiana on May 10 for nonpayment of 1909 taxes assessed in the name of W. H. Thompson. On November 11, 1911, the Registrar of the State Land Office and the State Auditor conveyed the subject land to the Board of Commissioners for the Atchafalaya Basin Levee District pursuant to the provisions of Act 97 of 1890.
Section 11 of Act 97 of 1890, LSA-R.S. 38:700, provides the following:
"In order to provide additional means to carry out the purposes of this Part and to furnish resources to enable the board to assist in establishing and completing a levee system in the district, all lands within the district belonging to or that may hereafter belong to the state, except land adjudicated to the state for nonpayment of taxes shall be conveyed to the Board of Commissioners of the Atchafalaya Basin Levee District. The Auditor and Registrar of the State Land Office shall convey to the board of levee commissioners the lands granted to the board whenever from time to time the board or the president of the board requests either *140 the Auditor or Registrar to convey the lands. The president shall cause the conveyances to be properly recorded in the recorder's office of the parishes where the lands are located. Upon recordation title to the lands with possession shall vest absolutely in the board of commissioners, its successors, or grantees. The lands shall be exempted from taxation after being conveyed to and while they remain in the possession and under the control of the board. The board may sell, mortgage, pledge or otherwise dispose of the lands at the time and for the price they deem proper. All proceeds derived therefrom shall be deposited in the state treasury to the credit of the Atchafalaya Basin Levee District and shall be drawn out only upon the warrants of the president of the board."
The conveyance by the Registrar of the State Land Office and the State Auditor on November 11, 1911, and the recordation thereof in the conveyance records of St. Martin Parish, Louisiana, vested the Levee Board with a good and valid title. LSA-R.S. 38:700.
As stated before, the trial judge in the instant case maintained the plea of thirty year prescription acquirendi causa.
In reasons for judgment signed by the trial judge after this case had been lodged in this Court, the trial judge, in addition to maintaining the plea of prescription, maintained the plea of estoppel filed by the original plaintiffs in the instant suit.
Counsel for the Levee Board does not seriously contend in oral argument and in brief before this Court that the Levee Board is entitled to the fee title to the subject property.
The record reveals that the original plaintiffs have traced their title to a sheriff's sale by the Succession of W. W. King to James G. Campbell, Agent, dated May 18, 1912, and an Act of Conveyance by James G. Campbell, agent, to Ideal Land Improvement Company, dated July 31, 1912.
A sheriff's deed is an act translative of title which may serve as the basis of a prescriptive title. Hamilton v. Rickerson, 185 La. 199, 168 So. 774; Leverett v. Loeb, 117 La. 310, 41 So. 584.
The nature of the land or the use to which the land may be devoted governs the possession necessary to support prescription. Boudreaux v. Olin Industries, 232 La. 405, 94 So.2d 417; Acosta v. Nunez (La. App.Orl., 1942), 5 So.2d 574.
The subject property was swampland and subject to flooding yearly. The evidence reveals that from the time the plaintiffs acquired the land from their predecessors-intitle to date, they have never been dispossessed of said property. On the contrary, they have remained in possession thereof and have continued to possess said land as well as property of this nature is susceptible to being possessed.
The plaintiffs, through their duly authorized agents, have periodically and systematically cut and removed all merchantable timber; have granted geophysical shooting options; have granted mineral leases; rights-of-way; and caused the construction of canal over said property; have paid taxes for a period in excess of fifty (50) years, and the Levee Board has received a portion of these taxes during all of this time. The plaintiffs have performed many acts of physical possession of the land in the instant suit as would be considered practicable and necessary for owners of land of this nature.
The record reveals that the land is swampland subject to frequent overflow from the Atchafalaya River and its tributaries, and that it is unfit for habitation or agricultural purposes.
The Levee Board did not introduce any evidence that it has ever exercised any possession whatsoever over the land in controversy.
*141 We, therefore, conclude that the plea of ten (10) and thirty (30) year prescription acquirendi causa is good and valid, and the original plaintiffs are hereby decreed to be the owners of the fee title to the land described in the judgment in the instant suit.
The most strenuous contention made by counsel for the Levee Board is that although plaintiffs are the owners of the fee title to the land, the mineral rights or mineral servitude in, on and under the land is owned by it. His argument is that the Levee Board is an agency of the State and that it cannot lose mineral servitudes on any property originally owned by it.
The basis for the argument on the part of counsel for the Levee Board is that under the provisions of Section 2, Article IV, LSA-Constitution, which provides, in part:
"* * * In all cases the mineral rights on any and all property sold by the State shall be reserved, except where the owner or other person having the right to redeem may buy or redeem property sold or adjudicated to the State for taxes. * * *"
The Levee Board is an agency of the State of Louisiana and is prohibited from alienating mineral rights under the above provisions of the Louisiana Constitution of 1921.
Section 16 of Article XIX of the Louisiana Constitution of 1921 provides the following:
"Prescription shall not run against the State in any civil matter, unless otherwise provided in this Constitution or expressly by law."
Counsel for the Levee Board also relies on the cases of State ex rel. Board of Commissioners of Tensas Basin Levee District v. Grace, 161 La. 1039, 109 So. 830; and Board of Commissioners of Caddo Levee District v. Pure Oil Company, 167 La. 801, 120 So. 373.
The Grace case, supra, involved a mandamus proceeding by the Levee Board against the Registrar of State lands to compel execution of a deed from the State to the district of lands which had been granted to it under an act of the Legislature of 1892. After passage of the act which authorized the conveyance and directed the registrar and auditor to execute an instrument of conveyance, no further action was taken for many years. When the district demanded execution of its deed, and upon refusal by the defendant officers, suit followed. The defendants resisted the demands primarily on the ground that in the meantime Section 2, Article IV of the Constitution had been adopted requiring the State to reserve minerals under all tracts conveyed and therefore they were unable to convey a full title as directed by the 1892 act. The court held upon existing authority that until the instrument of conveyance was executed by said officers the grant was not complete. The court further held that the constitutional provision referred to did not have retroactive effect nor did it repeal the earlier grant by the Legislature of 1892 of these lands to the Levee Board. Such grant continued in effect and remained open subject to its consummation at any time upon simple demand of the grantee and execution of the instrument of conveyance by the officers designated, which it was stated was a pure ministerial duty.
The Grace case, supra, is distinguishable from the case at bar in that a formal transfer of ownership was not made by the State to the Tensas Levee District until after 1921 because the Tensas Levee District had not complied with the provisions of LSA-R.S. 38:1450 which is identical with LSA-R.S. 38:700, with the exception of the names of the levee boards. In the instant case there was a literal compliance with the provisions of LSA-R.S. 38:700, and in 1911 the subject property became vested in the Levee Board including all of the mineral rights therein. In the Grace case, supra, the Supreme Court made the following statement, to-wit:
"* * * The Tensas Basin levee district was created and organized by the *142 state as a means of discharging its duty to protect the lands in said district from inundation. The district is a state agency, created and continued in existence by the state with the foregoing purpose in view. The state, should it transfer the land to the district, including the mineral rights, in accordance with the grant made by it, would not be parting with the property within the meaning of the constitutional section cited, but would only be placing it under the control of one of its agencies for the purpose of constructing and maintaining levees. The land would, to all practical intents and purposes, still be the property of the state. The district could not sell it without reserving to itself the mineral rights, for the reason that its creator, for whom it holds, could not do so. We see no reason, therefore, in so far as the section of the Constitution, cited, is concerned, why the auditor and the register should not execute the conveyance."
We are of the opinion that the language used was "obiter dictum" and was not necessary to the decision in said case, and the above statement has been rendered ineffective by the later cases decided by the Louisiana Supreme Court hereinafter cited in this opinion.
In the case of Board of Commissioners of Caddo Levee District v. Pure Oil Company, supra, the defendant oil company sought to recover certain royalties which had been previously paid by it to the Levee District. The lands in question had been certified to the Levee District from the State, but later by a consent judgment, the certification was adjudged null and title reverted to the State. It appears in this suit that the Levee District was claiming royalties during the time that the title to the land was standing in its name. The defendant pleaded prescription of three (3) years against the claim for rents or royalties. The court held that the three (3) year prescriptive period pleaded by defendant did run against the Levee Board even though it was an agency of the State.
Counsel for the Levee Board quotes the following language from the case of Board of Commissioners of Caddo Levee District v. Pure Oil Company, supra, in support of his proposition, to-wit:
"If the question presented involved the loss by prescription of the mineral rights themselves, on land conveyed or certified to a levee district, under the Constitution of 1921, we should most likely hold, in view of the conclusion reached in State ex rel. Board of Commissioners of Tensas Basin Levee District v. Grace, 161 La. 1039, 109 So. 830, that, as the levee district must retain such mineral rights, it could not lose them by prescription, for a state agency cannot lose by prescription that which it must retain, and cannot alienate."
This Court is of the opinion that the statement made by the court was obiter dictum and was not necessary in deciding the case for it was not at issue therein. As stated before, the Supreme Court cited the case of State ex rel. Board of Commissioners of Tensas Basin Levee District v. Grace, supra, in the statement, and we have already demonstrated that the facts in the Grace case are different from those in the instant case.
Following the decision in the Pure Oil Company case, supra, the Supreme Court decided the case of Board of Commissioners of Tensas Basin Levee District v. Earle, 169 La. 565, 125 So. 619. In that case, the property was acquired by John M. Sandidge. He defaulted in his payment of 1885 taxes and the property was then adjudicated to the State in 1886. The State, acting under the Legislative authority, LS A-R.S. 38:1450, transferred the land to plaintiff board in June, 1889. On November 9, 1898, the board transferred said property to Tensas Delta Land Company. The land was assessed to the Estate of J. W. Sandidge for 1898 and in 1900 was sold at *143 a tax sale to private individuals. From these purchases, the land passed by mesne conveyances to the defendants. Plaintiff filed a petitory action against defendants. Defendants, among other pleas, filed a plea of ten (10) years acquisitive prescription in bar of plaintiff's claim. The district judge held in favor of the Levee Board, basing his decision on the basis that title to the Levee Board was in the Levee Board only as an agent of the State, and the defective title in favor of defendants could not be cured by prescription as against the State and its agent, the Levee Board. The trial judge relied on the Grace case, supra.
The Supreme Court, in reversing the district court in Board of Commissioners of Tensas Basin Levee District v. Earle, supra, stated:
"It is true the court in that case did say that the levee district was a state agency, and that the lands conveyed to the levee board would to all practical intents and purposes still be the property of the state, but that was a proceeding by mandamus to compel the defendant to certify the lands to the levee board under a statute requiring him to do so.
"The issue was made that since the Constitution of 1921 the state could not make deed to the lands without reserving the minerals, and it was in considering that issue that the court used the expression referred to. There was in that case no question as to prescription running against the levee board in favor of an individual who had acquired rights to the land as against the claim of the levee board."
* * * * * *
"The question whether prescription runs against a levee board was directly presented for the first time in the case of Board of Commissioners of Caddo Levee District v. Pure Oil Co., 167 La. [801], 811, 120 So. 373, 377, and was decided adversely to the contention made by the levee board in the instant case.
"In that case it was stated that the `plaintiff has, and always has had, the right to sue and to be sued in its corporate name. It is a separate entity from the state, created by the state, it is true, to accomplish certain public purposes, but is nevertheless distinct from it.'"
* * * * * *
"The levee board in the instant case was vested with the power of alienation of both land and minerals during the prescriptive period of ten years before the adoption of the Constitution of 1921."
* * * * * *
"There can be no mistake as to the ruling of the court in the Pure Oil case, supra. It was that prescription did run against a levee board as a separate entity from the state, vested with the power of alienation and with the right to sue and be sued."
The next case on the subject is that of Haas v. Board of Commissioners of Red River, etc., 206 La. 378, 19 So.2d 173. In that case the Supreme Court reaffirmed its previous decisions to the effect that acquisitive prescription does run against a levee board and that it is a separate and distinct entity from the State of Louisiana.
In the recent case of Stokes v. Harrison, 238 La. 343, 115 So.2d 373, the court held that Section 2, Article IV of the 1921 Constitution was inapplicable to a State agency, namely, a school board. The court held that the school board was a separate and distinct entity, possessing certain powers separate and apart from the State. The court did not consider the agency as tantamount to the "State" within the meaning of Section 2, Article IV.
The Stokes case, supra, dealt only with a local school board, two conclusions expressed in it uphold quite strongly the contention *144 that prescription will run against a levee board. The court devoted considerable time to pointing out that had it been intended in Section 2, Article IV of the Constitution to provide for the reservation of minerals by all State agencies and subdivisions, it would have specifically said so; and numerous instances were cited where reference was specifically made both to the State and to any political corporation thereof. The court then invoked the maxim "expressio unius est exclusio alterius" (Expression of one thing is the exclusion of another) and approved quoted language of the Court of Appeal in saying that the restriction or limitation was intended to apply to the State only as a separate entity from its political subdivision. This is very significant in the present case. The Stokes case, supra, concluded with an appraisal of both the Grace and Pure Oil Company cases, supra. The court quoted expressions from both of these cases holding, in effect, that the State and the Levee Board were one and the same; and it was specifically said in the Stokes case, supra, that the language in each case was not necessary for the decision in either case. It appears that this is a clear repudiation of the earlier dicta that the Levee Board in effect is the State of Louisiana; and, that repudiation is contained in a case decided only two years ago.
An examination of the statute under which the Levee Board was created, namely, Act 97 of 1890, LSA-R.S. 38:691 et seq. reveals that the only difference between the Levee Board and a school board is that the Commissioners are appointed by the Governor rather than elected by the people. In case of a vacancy on a school board in this State, the Governor appoints a person to fill the vacancy caused by death, resignation or otherwise. LSA-R.S. 17:53.
In both statutes creating the Levee Board and school board, they are considered political subdivisions of the State with the right to sue and be sued, and to acquire and sell any land which they may own.
There is an additional reason why this Court is of the opinion that the Levee Board is not entitled to the mineral rights or mineral servitude in, on and under the land in the instant case. The subject property was transferred to the Levee Board in 1911, ten years prior to the adoption of the Louisiana Constitution of 1921. At the time of the transfer of the property in the instant case by the State to the Levee Board, the 1898 Constitution was in effect, and when the State conveyed said property, it did not retain the minerals for there was no provision in that Constitution which stated that it could not alienate the minerals, and the Levee Board, in 1911, acquired both the fee title and the mineral rights in the subject property, and since prescription runs against a levee board, the original plaintiffs acquired the mineral rights to the subject property by acquisitive prescription of ten (10) and thirty (30) years.
In the case of Rycade Oil Corporation v. Board of Commissioners for Atchafalaya Basin Levee District (La.App. 3 Cir., 1961), 129 So.2d 302, writs of certiorari denied, this Court upheld a contractual right that had vested prior to 1921 as against the claim that the mineral rights must be reserved.
Constitutional provisions must be strictly construed and cannot be modified or amended by implication, and in the case of State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477, it was specifically held that constitutional provisions are subject to the same rules of construction as statutes.
We are of the opinion that the application of Section 2, Article IV of the Constitution of 1921, must be limited strictly to property sold by the State since its adoption, and that since absolute title to the property was in the Levee Board in 1911, including fee title to said land together with the mineral rights in, on and under the property in the instant suit, the Levee Board has lost the mineral rights to said property by prescription.
*145 Having concluded that the pleas of ten (10) and thirty (30) years prescription acquirendi causa are good and valid, this Court does not consider it necessary to discuss the plea of estoppel filed by the original plaintiffs and mentioned by the trial judge in his reasons for judgment.
The Board of Commissioners for the Atchafalaya Basin Levee District is relieved of payment of costs of this appeal. See LSA-R.S. 13:4521.
For the reasons assigned, the judgment of the district court is affirmed.
Affirmed.
TATE, Judge (concurring).
The essential holding of the majority is simply that the 1921 constitutional prohibition against the alienation of State minerals was not intended to apply to pre-1921 transactions whereby private persons had obtained an interest in State lands. With that holding, the writer can concur.
However, the writer cannot rest with such concurrence, because the majority in reaching this result has utilized dangerous reasoning which, if accepted, would amount to a judicial nullification of the absolute prohibition in our State constitution against the alienation of State-owned minerals. The majority apparently suggests that the constitutional prohibition only applies to the property owned by the "State" and not to property owned by those agencies through which the State acts, being the "state agencies", such as levee boards. If this reasoning is correct, the courts have opened the door to the plundering and disbursement of State-owned mineral resources, supposedly forever inalienably guarded by our Constitution. Because of the extremely great danger of such a holding, and because of what I feel to be its disregard of the prior jurisprudence, I am impelled to express the following views strongly, with the hope that our Supreme Court, if application is made to it, will have a chance to fully consider and to pass upon this rationale expressed by the majority opinion.
The wisdom or not of the constitutional prohibition against alienation of State-owned minerals is beyond the competence of the courts to decide. Critics have stated that such an alienation unwisely removes from commerce a valuable natural asset of our State and unwisely provides for separate ownerships of the surface and of the mineral estates. Proponents have said that, without the prohibition in the constitution, valuable State assets would be plundered for the benefit of a privileged few with inside knowledge or connections, rather than used for the benefit of all the people in whom the title to the minerals under State lands is vested. The courts simply cannot be concerned with such policy considerations, for the people through our Constitution have decided in favor of the latter policy; and it is the duty of the courts, as well as of all branches of the State government, to enforce this constitutional prohibition, whatever may be the private views of the officers concerned.
The majority's suggestion that the alienation of minerals owned by state agencies is not within the scope of the constitutional prohibition against the alienation of State-owned minerals, would make a mockery, in my opinion, of the solemn expression of the people's will incorporated in our State Constitution to the effect that State minerals are forever inalienablefor by the simple process of transferring the state minerals to a state agency such as a levee board (which it has been held does not violate the constitutional prohibition, see State ex rel. Board, etc. v. Grace, cited below), supposedly inalienable State minerals would then be available for distribution or sale to insiders, cronies, or other private persons. (I need not point out that the personnel of a levee board serves at the pleasure of the current executive; and is an arm of the executive branch of our State government; that levee board funds are paid into and drawn from the State treasury; or to any of the other indicia by which it is made evidence that the levee board is an arm of the "State", which of *146 course can perform all its acts only through officials or through such State agencies.)
In State ex rel. Board, etc. v. Grace, 161 La. 1039, 109 So. 830, our Supreme Court was called upon to consider the effect of the constitutional prohibition against the alienation of state owned minerals incorporated in Section 2, Article 4 of the Louisiana Constitution of 1921, LSA. The State Auditor and the State Register refused to convey state lands to a levee board unless at least the state minerals were reserved. As an essential element of its reasoning, not obiter dicta, the Supreme Court held that the constitutional prohibition did not even partially repeal the pre-1921 grant to the levee board of the right to apply for their such lands because, 109 So. 832: "The state, should it transfer the land to the district, including the mineral rights, in accordance with the grant made by it would not be parting with the property within the meaning of the constitutional section cited [i. e., the constitutional prohibition against alienation of minerals], but would only be placing it under the control of one of its agencies for the purpose of constructing and maintaining levees. The land would, to all practical intents and purposes, still be the property of the state. The district could not sell it without reserving to itself the mineral rights, for the reason that its creator, for whom it holds, could not do so. We see no reason, therefore, in so far as the section of the Constitution, cited, is concerned, why the auditor and the register should not execute the conveyance." (Italics mine.) Mandamus therefore issued ordering the State registrar and the State auditor to transfer the lands to the levee board in question, without reserving the minerals to the State as otherwise required by the Constitution (unless, after transfer to the levee board, as held, the minerals would still be inalienable from the State through its agency).
In compliance with this decision, many thousands, perhaps millions, of acres of State-owned lands have been transferred to levee boards or other State agencies, without any specific reservation of the State mineral rights, of which, constitutionally, the State cannot be divested of ownership. In reliance upon the holding of this decision, the levee boards and other state agencies have transferred without reservation many, many thousands of acres of land to private persons, since the constitutional reservation of the State minerals was not jeopardized by such transfers according to the holding of our Supreme Court in this case. Those who have obtained lands under which lie State minerals may indeed receive a windfall, to the detriment of the people of this State and in outright violation of our State constitution, if the majority's reasoning is correct that the levee boards are permitted to transfer ownership of state minerals, even though the State itself is constitutionally prohibited from such alienation.
The majority feels that our Supreme Court has held that acquisitive and liberative prescription can run against levee boards even insofar as the minerals under lands sold by them are concerned. The majority's construction is based upon Haas v. Board, etc., 206 La. 378, 19 So.2d 173; Board of Com'rs, etc. v. Earle, 169 La. 565, 125 So. 619, and Board of Com'rs, etc. v. Pure Oil Co., 167 La. 801, 120 So. 373. These decisions, however, concern only the running of prescription against levee boards prior to 1921; they specifically indicated that private persons could not have obtained prescriptive title to State minerals after the adoption of the constitutional prohibition of 1921. See 19 So.2d 174; 125 So. 620, and 120 So. 376. I cannot conceive how these cases can be cited as authority to the contrary.
The decisions cited are based upon the concept that the State legislature had consented to the running of prescription against the levee boards by permitting the agencies in question to sue and to be sued. See 19 So.2d 174; 120 So. 377. Of course, neither the legislature nor the courts can permit what the constitution prohibits; the legislature cannot waive prescription to validate *147 an alienation of minerals which is prohibited by the Constitution. This distinction is made clear with specific reference to the 1921 constitutional prohibition in California Co. v. Price, 225 La. 706, 74 So.2d 1 (see syllabi 6, 7).
Thus, it is true, the legislature can legally permit the running of prescription against levee board surface lands, because there is no constitutional prohibition preventing their alienation; but no act of any legislature, no act of any governor, and no act of any court can permit the alienation of state minerals, an absolute nullity under the prohibition of our State Constitution.
As noted in the concurring opinion in Rycade Oil Corporation v. Board of Com'rs, La.App. 3 Cir., 129 So.2d 302, a long line of Supreme Court decisions has consistently considered that the 1921 constitutional prohibition against alienation of state owned minerals prevented the levee boards after 1921 from disposing of the minerals underneath their lands. See 129 So.2d 305. In view of this settled jurisprudence, the holding in Stokes v. Harrison, 238 La. 343, 115 So.2d 373, to the effect that constitutional prohibition did not apply to local school boards, must be considered as limited to local agencies of such a nature. See 115 So.2d 380-381: "We do not believe that it is fair and just to extend the constitutional limitation of Section 2 of Article IV to a situation of the present nature. To do so would in effect be amending the Constitution of 1921 by writing into it something which was neither intended nor contemplated."
Nevertheless, subject to the above reservation, in the writer's opinion the majority has reached the correct result in holding that the title to the minerals under the present land are not affected by the 1921 prohibition.
At the time the levee board acquired these lands in 1911, levee board lands could be acquired by others by both acquisitive and liberative prescription. See cases relied upon by majority. This is undoubtedly the law at the present time as to the title to the surface of the land, although the 1921 prohibition prevents the acquiring of prescriptive title to State mineral rights.
By a course of construction, our Supreme Court has limited the effects of the 1921 constitutional prohibition against alienation of State minerals to titles emanating after 1921 from the State. As to those titles to land depending on deraignments of a particular tract from the State prior to 1921 (although for all other purposes the rights of those acquiring from the State had not yet vested by 1921), our Supreme Court has consistently held that the acquisition of a particular tract from the State prior to 1921 carried the minerals with the acquisition, even though further steps after 1921 were required in order to perfect the title to that tract, the deraignment of which specified tract from the State was initiated prior to 1921. See, e. g., Lum Chow v. Board of Com'rs for Lafourche Basin Levee Dist., 203 La. 268, 13 So.2d 857; Schwing Lumber & Shingle Co., Inc. v. Board of Commissioners of Atchafalaya Basin Levee District, 200 La. 1049, 9 So.2d 409; State ex rel. Hyams' Heirs v. Grace, 197 La. 428, 1 So.2d 683; Standard Oil Co. of Louisiana v. Allison, 196 La. 838, 200 So. 273; Barnett v. State Mineral Board, 193 La. 1055, 192 So. 701.
As of 1921 the plaintiffs' predecessors in title were possessing this particular tract of land actually and under a good faith deed for many years, by virtue of which any claim of the levee board to the tract was in 1921 in the process of being extinguished by prescription. Unless the adoption of the 1921 constitutional prohibition prevented the completion of the running of prescription, the claim of the levee board was actually extinguished by prescription shortly after enactment of the 1921 constitutional prohibition.
Applying the rationale of the cited decisions to the present situation, and limiting *148 the intention of the 1921 constitutional prohibition against the alienation of State minerals so as only to apply to alienations from the State initiated after the effective date of the 1921 prohibition, the majority reasonably has found that the constitutional prohibition was not intended to prevent the acquisition of prescriptive title to the tract in question, including the minerals, which title to this specific tract initiated prior to 1921; nor to alter the relationship of the conflicting claims of the parties to the tract (including the minerals) as it existed prior to the adoption of the 1921 constitutional prohibition. On that narrow basis, the writer concurs in the result reached.

On Application for Rehearing.
En Banc. Rehearing denied.